# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 27, 2012 Session

## CHELSEA SAMANTHA BARNES
### v.
## DANIEL ADAM BARNES

**Appeal from the Chancery Court of Cheatham County**
**No. 14713    Robert E. Burch, Judge**

---

**No. M2011-01824-COA-R3-CV - Filed: October 24, 2012**

---

This is a divorce appeal.  The parties were married for two years and had one minor child. At the time of the divorce trial, both parties were unemployed.  The trial court adopted the mother's proposed parenting plan in its entirety, based on its review of the child support history.  It awarded minimal alimony and calculated child support by imputing income to the father but not to the mother.  The father appeals.  We affirm the award of alimony, vacate the parenting plan and the award of child support, and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed in Part, Vacated in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Jon S. Jablonski, Nashville, Tennessee for the Defendant/Appellant Daniel Adam Barnes

Jennifer Noe and Lynn Newcomb, Ashland City, Tennessee, for the Plaintiff/Appellee Chelsea Samantha Barnes

## OPINION

### FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellee Chelsea Samantha Barnes ("Mother") and Defendant/Appellant Daniel Adam Barnes ("Father") married on June 13, 2008. One child was born of the marriage, daughter Madison Lee Barnes ("Maddie"), in March 2009. During the marriage, Father had steady work running his own business. Until the child was born, Mother worked at a minimum wage job; after birth of the parties' child, Mother became a stay-at-home parent.

In June 2010, after a little over two years of marriage, Mother filed a complaint for divorce in the Chancery Court of Cheatham County, alleging inappropriate marital conduct and irreconcilable differences. Father counterclaimed for divorce, alleging inappropriate marital conduct by Mother, as well as irreconcilable differences. On July 15, 2010, the trial court entered a temporary consent order with a parenting schedule in which Mother was designated as the primary residential parent and Father had substantial alternate parenting time; Father's child support was set at $65 per month.

In November 2010, the parties engaged in mediation, which appears to have been partially productive. They agreed to a parenting plan that would apply until the child began attending pre-kindergarten. Under this mediated agreement, Mother was again the primary residential parent, and Father had substantial alternate parenting time. The parties were unable to agree on a parenting plan that would apply once the child began pre-kindergarten, or on other issues such as child support, alimony, and the party to whom the divorce would be awarded. The mediated agreement, signed by all parties and their counsel, is included in the appellate record. However, the mediated agreement was apparently not put in the form of an order, and the parties proceeded to trial on all issues, including those on which they had agreed in the mediation.[1]

The trial was held on July 14, 2011. The appellate record does not contain a transcript of the trial. The trial court filed its own statement of the evidence outlining the testimony, and our recitation of the proof comes from the statement of the evidence. The trial court heard testimony from several witnesses, but the primary testimony came from Mother and Father. At the time of trial, Mother was 23 years old, Father was 31 years old, and the parties' daughter was two years old. Father has a son from a previous marriage, who was eight years old at the time of trial.

---

[1]The fact that the parties' mediated agreement was not incorporated into the trial court's final order is not raised as an issue on appeal.

Mother testified that Father acted like "father of the year" toward their daughter when they were out in public but did not pay attention to her while at home. She asserted that Father ignored their daughter in favor of spending more time with his son, doing things such as practicing baseball. Mother said that Father cursed her in front of the children and recounted an incident in which Father allegedly coached toddler Maddie into calling Mother a "whore." Mother claimed that Father attempted to get Mother to perform sexually inappropriate acts when the children were around the house.

Mother testified that the job she held before giving birth to the parties' daughter paid $7.25 per hour. At the time of trial, Mother was physically unable to work due to a hip injury sustained in a car accident. Mother had apparently undergone one surgery on her hip and was expecting to have additional surgery to repair a problem from her previous surgery. Mother said her second surgery will require approximately six weeks of recovery time. Mother testified that she should be able to resume working after she recovers from this surgery. At the time of trial, Mother was receiving food stamps, which were sufficient to pay for breakfast and lunch for Mother and Maddie, but Mother's parents were paying for their dinners.

Father's testimony contrasted with Mother's testimony. Father testified that when he had parenting time with their daughter, they often engaged in activities such as going to the zoo, to the park, or to his son's baseball games. Father said that Maddie and his son are close and enjoy spending time together. Father claimed that Mother had expressed the feeling that their daughter was holding Mother down. When the parties were still living together, Father said, Mother would leave their daughter with Mother's parents while Mother "would run the streets." Father said that he wanted to share parenting time with Maddie "fifty-fifty" with Mother. Father was especially concerned about their daughter being in Mother's care on Wednesday nights because Mother and her parents go out on Wednesday nights and drink heavily. For this reason, Father asked the trial court to give him parenting time on Wednesday nights. Father said the parties' biggest arguments had been over allowing Mother's parents, after they had been drinking heavily, to take Maddie home with them.

At the time of trial, Father was unemployed because "his business went under." Prior to the demise of Father's business, he made $40,000 per year. The day before the trial, Father sold his business inventory in order to pay his $1000 child support obligation.

The trial court heard testimony from other witnesses as well. The maternal grandmother corroborated Mother's testimony that Father sometimes ignored Maddie, and that he coached the child into calling Mother a "whore." Father's former wife testified that Father is a good parent, and that their son and Father's daughter Maddie are well cared for in his custody. She

said that Father had always paid child support for their son. This concluded the evidence presented at trial.

On August 1, 2011, the trial court entered a final divorce decree and Mother was awarded the divorce on grounds of inappropriate marital conduct. The trial court adopted Mother's proposed parenting plan in its entirety. Under this parenting plan, Mother was designated the primary residential parent. Father received 85 days of alternate parenting time per year, primarily in the form of parenting time every other weekend from 6 p.m. Friday to 6 p.m. Sunday on the weekends that Father's son was with him. Although Mother received two weeks of uninterrupted parenting time in the summer, Father was given no additional summer parenting time. Holidays were divided in a way that largely favored Mother.

Child support in the parenting plan was calculated by using an income for Father of $2,080 per month, and attributing $0 income to Mother, resulting in a child support payment for Father of $384 per month.[2] Based on this, the trial court held that Father owed $1,430 in child support arrearages.[3] Mother was awarded the federal income tax credit for the child. In the order, the trial court explained that it had concluded that Mother's parenting plan was "in the best interest of the minor child after reviewing the child support history in this matter. [Father] shall be given credit on his arrearage amount for the $1,000.00 he paid after the preparation of the parenting plan by [Mother]."

The final decree also awarded Mother a total of $1,350 dollars in alimony, paid over the course of six months. Father now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Father argues that the record does not support an award of alimony in this short term marriage. Father also contends:

> The parenting plan entered by the [trial court], which purports to provide for the care and support of the parties' minor child, is not justified by the evidence presented, makes no effort to permit both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set

---

[2] Any self-employment tax paid by Father was not deducted from this gross income amount despite Father having been self-employed; however, an amount of $329.25 was deducted based on the child support Father paid for his son.

[3] The child support worksheet attached to the parenting plan adopted by the trial court appears to calculate child support based on Father receiving 80 days of parenting time per year, rather than the 85 days per year that was ultimately awarded.

-4-

forth in [Tennessee Code Annotated] § 36-6-106, and is not in the child's best interest.

In the Argument section of his brief, Father addresses both the parenting schedule and the child support awarded in the parenting plan adopted by the trial court.[4]

Findings of fact by the trial court, sitting without a jury, are reviewed *de novo* on the record, with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d) (2007). If the trial court fails to make findings of fact, the appellate court must conduct its "own independent review of the record to determine where the preponderance of the evidence lies." *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000) (citing *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999)). We afford great deference to the trial court's determinations on the credibility of witnesses. *Hughes v. Metro. Gov't of Nashville & Davidson Co.*, 340 S.W.3d 352, 360 (Tenn. 2011); *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). Questions of law are reviewed *de novo*, with no presumption of correctness. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Williams v. Williams*, 286 S.W.3d 290, 295 (Tenn. Ct. App. 2008).

Trial courts are afforded broad discretion in decisions regarding the nature, duration, and amount of alimony; therefore, but for an abuse of discretion, the trial court's award of alimony will normally be upheld on appeal. *Andrews v. Andrews*, 344 S.W.3d 321, 340 (Tenn. Ct. App. 2010); *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986). Likewise, the trial court has considerable discretion concerning the details of the parties' parenting arrangement. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *Suttles v. Suttles*, 748 S.W.2d 429, 429 (Tenn. 1988). A trial court may be found to have abused its discretion "when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).

Prior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child custody and support. *Richardson*, 189 S.W.3d at 725 (citing *Hopkins v. Hopkins*, 152 S.W.3d 447, 452 (Tenn. 2004) (Barker, J., dissenting)). However,

---

[4]In her appellate brief, Mother contends that Father did not properly raise child support as an issue on appeal. We find that, though child support could have been more clearly included in the Issues section of Father's brief, it is part of the parenting plan and Father has fairly raised it as an issue on appeal. Mother chose not to include any argument in the alternative on the issue of child support, so we consider the issue based on Father's arguments and the Court's research.

the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. *Richardson*, 189 S.W.3d at 725 (citing *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith*, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004)). "[T]he amount of support derived from a proper application of the formula in the Child Support Guidelines becomes the presumptive amount of child support owed." *Richardson*, 189 S.W.3d at 725. This amount of support is rebuttable. *Id.*; Tenn. Code Ann. § 36–5–101(e)(1)(A); Tenn. Comp. R. & Regs. 1240-2-4-.01(1)(d)(1) (2006); *see also Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005). "Trial courts may, in their discretion, deviate from the amount of support required by the Child Support Guidelines, but when they do, they must make specific written findings regarding how the application of the Child Support Guidelines would be unjust or inappropriate in the case." *Richardson*, 189 S.W.3d at 725 (citing *State v. Wilson*, 132 S.W.3d 340, 343 (Tenn. 2004); *Jones*, 930 S.W.2d at 545; Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(b) (2006); Tenn. Comp. R. & Regs. 1240-2-4-.01(4) (2006)). Thus, while the trial courts retain some discretion on a few issues that fall under the rubric of child support, they are for the most part required to either comply with the Child Support Guidelines or state in detail the basis for any decision to deviate from them.

**ANALYSIS**

**Alimony**

Father argues on appeal that the trial court erred in granting Mother an award of alimony. He asserts that, in Mother's complaint for divorce, she asked for only *pendente lite* alimony, and therefore the trial court's judgment exceeded the scope of the pleadings. Father also contends that Mother offered no proof as to her needs, her ability to earn, or Father's ability to pay. Father acknowledges that there is proof in the record that Mother would be unable to work for a period of approximately six weeks while recovering from surgery, but he notes also that undisputed proof at trial demonstrated that Father was unable to pay alimony. Specifically, Father points out the proof that he was unemployed at the time of trial and had resorted to selling the inventory from his defunct business in order to pay his child support.

Addressing Father's argument that relief awarded exceeded the scope of the relief sought in Mother's complaint, this Court must give Mother's complaint "liberal construction with all reasonable intendments taken in favor of the judgment." *Killingsworth v. Ted Russell Ford, Inc.,* 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002) (quoting *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955)). Reviewing Mother's complaint under this standard, we find that the complaint Mother filed can fairly be read to ask for an award of spousal support. Consequently, we reject this contention.

Father argues next that Mother did not offer proof concerning her needs, her earning capacity, or Father's present ability to pay. Certainly we are presented with a sparse record in this cause. Unfortunately, the trial court below did not even specify the type of alimony it was awarding. Based on the duration and nature of the alimony award, it cannot be either *in futuro* or *in solido,* leaving either rehabilitative or transitional alimony as the only remaining choices. Tenn. Code Ann. § 36-5-121(d)(1) (2005); *Andrews*, 344 S.W.3d at 341 ("Four types of spousal support are recognized in Tennessee: alimony *in futuro*, alimony *in solido*, rehabilitative alimony, and transitional alimony.") There was no proof that Mother intended to pursue rehabilitation in the form of education or training, so we surmise that the award was intended to be transitional alimony. Tenn. Code Ann. § 36-5-121(g)(1-4) (2011).

Moreover, the trial court also failed to make any factual findings to support its alimony award. The lack of factual findings by the trial court leaves us with the task of "conduct[ing] our own independent review of the record to determine where the preponderance of the evidence lies." *Simmons v. Simmons*, No. M2005-00348-COA-R3-CV, 2006 WL 236904, at *2; 2006 Tenn. App. LEXIS 69, at *5 (Tenn. Ct. App. Jan. 31, 2006) (quoting *Brooks v. Brooks,* 992 S.W.2d 403, 405 (Tenn. 1999)).

The undisputed evidence in the record shows that Mother was unable to work at the time of trial, was anticipating surgery on her hip, and expected to have a recovery period of approximately six weeks. Mother also testified that she was in serious financial straits, relying on food stamps and assistance from her parents for food for herself and the parties' daughter. The proof also showed that, during the marriage, Mother worked at a minimum wage job, while Father earned approximately $40,000 per year. At the time of trial, however, both parties were unemployed. Father had sold some business inventory to meet his child support obligation.

Based on our review, we find that the record contains minimally sufficient, undisputed evidence to support the trial court's award of transitional alimony, given the modest amount of alimony awarded and the limited duration of the award. Therefore, we cannot conclude that the award constituted an abuse of the trial court's discretion.

**Parenting Plan**

Father next argues that the trial court erred in adopting Mother's proposed permanent parenting plan outright. Father points out that the only reason cited by the trial court for adopting Mother's proposed parenting plan was that it found "it is in the best interest of [Maddie] after reviewing the child support history in this matter." Father argues that even this single finding is not supported by the evidence in the record. Father contends that the plan adopted by the trial court "made no effort to permit both parents to enjoy the maximum

participation possible in the life of the child consistent with the factors set forth in T.C.A. § 36-6-106." Of the factors enumerated in Tennessee Code Annotated §36-6-106, Father contends that six are neutral, three weigh in his favor, and none weigh in Mother's favor.

In response, Wife cites this Court's 1987 decision in *Dodd v. Dodd*, 737 S.W.2d 286, 289 (Tenn. Ct. App. 1987), for the proposition that the fifty-fifty joint parenting arrangement proposed by Father in the trial court below "rarely, if ever works – for the children." Based on the statement of the evidence prepared by the trial court, Mother claims, it is apparent that the trial court took into account all relevant matters in making its decision on the parenting arrangement.

In fashioning a parenting plan, the trial court is charged with keeping the best interest of the child paramount; the needs of the parents are secondary. The parenting plan is focused on the child, and the goal is to place the child in the environment that best serves his or her needs. Tenn. Code Ann. § 36-6-106(a) (2012); Tenn. Code Ann. § 36-6-404; *Eldridge*, 42 S.W.3d at 85; *Parker v. Parker*, 986 S.W.2d 557, 562 (Tenn. 1999); *Cummings v. Cummings*, No. M2003-00086-COA-R3-CV, 2004 WL 2346000, at *5; 2004 Tenn. App. LEXIS 676, at *12-13 (Tenn. Ct. App. Oct. 15, 2004). Tennessee Code Annotated §36-6-401 addresses this:

> The general assembly recognizes the fundamental importance of the parent-child relationship to the welfare of the child, and the relationship between the child and each parent should be fostered unless inconsistent with the child's best interests. The best interests of the child are served by a parenting arrangement that best maintains a child's emotional growth, health and stability, and physical care.

Tenn. Code Ann. § 36-6-401(a) (2010); *Henson v. Henson*, No. W2011-02504-COA-R3-CV, 2012 WL 3064102, at *3; 2012 Tenn. App. LEXIS 571, at *6-7 (Tenn. Ct. App. July 30, 2012). The trial court has broad discretion with regard to parenting plans, and its decision will normally be upheld on appeal unless it was based on the "application of an incorrect legal standard, is against logic or reasoning, or is not supported by a preponderance of the evidence." *Cummings,* 2004 WL 2346000, at *5; 2004 Tenn. App. LEXIS 676, at *14 (citing *Eldridge*, 42 S.W.3d at 85).

A trial court faced with a parenting decision is directed to consider the factors set forth in Section 36-6-106(a) when fashioning a parenting plan. *See also* Tenn. Code Ann. § 36-6-404. However, it is not required to expressly analyze each factor in its order or explain how each factor affected its overall decision. *Brady v. Gugler*, No. M2006-01993-COA-R3-CV, 2008 WL 836089 at *4-5; 2008 Tenn. App. LEXIS 187, at *11-12 (Tenn. Ct. App. Mar. 27,

2008); *see also Reinagel v. Reinagel*, No. M2009-02416-COA-R3-CV, 2010 WL 2867129, at \*5; 2010 Tenn. App. LEXIS 458, at \*13 (Tenn. Ct. App. July 21, 2010) (citing **Burris v. Burris**, No. M2009-00498-COA-R3-CV, 2010 WL 1404385, at \*4; 2010 Tenn. App. LEXIS 254, at \*12 (Tenn. Ct. App. Apr. 7, 2010)).

Unlike the evidence in this case relevant to alimony, the evidence in the statement of the evidence on the parties' parenting strengths and weaknesses is sharply conflicting. Mother testified that Father is indifferent to his daughter, favors his son, and exposes the parties' daughter to inappropriate language and conduct. For his part, Father testified that he is an enthusiastic and involved parent, and that Mother felt constrained by being a parent and placed the parties' daughter in the care of her inebriated maternal grandparents. The trial court made no express determinations regarding the parties' credibility, or which testimony was credited. Indeed, the trial court made no factual findings at all pertaining to the parenting plan.

In some cases, even where the trial court has not made express its assessment of the witnesses' credibility, the appellate court can surmise which witnesses were credited based on the factual findings made, or even based on the trial court's ultimate decision. In this case, we cannot. The trial court's order states the sole basis for its decision to adopt Mother's proposed parenting plan as its "review[] [of] the child support history in this matter." That is it.

Mother invites this Court to assume that the trial court considered all relevant factors in arriving at its decision. The trial court's order precludes such an assumption. The trial court's order states the sole basis for its decision, namely, "the child support history," and does not even explain what it means by that.

As noted above, trial courts have broad discretion in decisions on parenting issues. However, this discretion is not without bounds. Respectfully, a choice to base an important decision such as the best parenting plan for the parties' child solely on "the child support history" is illogical and amounts to an abuse of the trial court's discretion.

In some cases, if the trial court is deemed to have abused its discretion with respect to a parenting plan, the appellate court can rectify the situation by modifying the parenting plan adopted by the trial court or by otherwise ordering a specific parenting arrangement. This is not such a case. As noted above, the record of the trial consists of a minimal statement of the evidence, which summarizes sharply conflicting evidence regarding parenting issues. The trial court gave no indication whose testimony it would have credited had it relied on the parties' testimony in making its decision. Thus, we are left with little choice but to vacate the parenting plan adopted by the trial court and remand the case for adoption of a new one.

On remand, we specifically draw the trial court's attention to an amendment to Tennessee Code Annotated §36-6-106(a) that became effective shortly before the trial in this cause. The amended provision states:

> In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in subdivisions (a)(1)-(10), the location of the residences of the parents, the child's need for stability and all other relevant factors.

Tenn. Code Ann. § 36-6-106(a) (2011); *see* 2011 Pub. Acts, ch. 433, § 1 (effective June 6, 2011); *Henson*, 2012 WL 3064102, at *3; 2012 Tenn. App. LEXIS 571, at *7. We observe also that the parenting plan proposed by Mother and adopted by the trial court was notably lop-sided, in that it permitted Father no more than two days at a time with his daughter, year-round, and divided holidays in a way that clearly favored Mother. We recognize that, in some instances, such a parenting schedule may be necessary to fit the child's needs, which are paramount. This may especially be true with a very young child, as is the parties' daughter in this case. However, it is noteworthy that the parties' mediated parenting agreement afforded Father more time with his daughter than does the plan ultimately adopted by the trial court. While the trial court is not bound by a parenting arrangement on which the parties have agreed, it may legitimately take such an agreement into account. *See Greer v. Greer,* No. W2009-01587-COA-R3-CV, 2010 WL 3852321, at *7; 2010 Tenn. App. LEXIS 614, at *19-20 (Tenn. Ct. App. Sept. 30, 2010).

Moreover, under Rule 52.01 of the Tennessee Rules of Civil Procedure, the trial court is required to render findings of fact and conclusions of law to support its decisions. Tenn. R. Civ. P. 52.01 (2007); *Poole v. Union Planters Bank*, 337 S.W.3d 771, 791 n.12 (Tenn. Ct. App. 2010). Simply stating the trial court's decision, without more, does not fulfill this mandate. To avoid further remand in the event of another appeal, on remand, the trial court is directed to issue findings of fact and conclusions of law.

### Child Support

Father argues that the trial court erred in calculating child support using an income for Father of $2,080 per month and an income for Mother of zero, when in fact both parties were unemployed at the time of trial. Father notes that Mother worked before their child was born, albeit at a minimum wage job, and she testified that she expected to be able to work again once she completed recovery from her anticipated second surgery.

"The fairness of a child support award depends on an accurate determination of both parents' gross income or ability to support." ***Massey v. Casals,*** 315 S.W.3d 788, 795 (Tenn. Ct. App. 2009). In most cases, a parent's earning capacity or ability to earn income is equivalent to the parent's gross income. ***Id.*** In this case, however, at the time of trial, neither party was employed, and neither had income. As the trial court, once again, made no factual findings to support its decision, we can only surmise that the trial court chose to impute income to Father, but not to Mother, and based its child support calculation on Father's imputed income alone.

Under the Child Support Guidelines, the trial court may impute income under certain limited circumstances. ***See Goodman v. Goodman,*** No. W2011-01971-COA-R3-CV, 2012 WL 1605164, at *4; 2012 Tenn. App. LEXIS 293, at *12 (Tenn. Ct. App. May 7, 2012); ***see also*** Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(i)(I-III). The ***Goodman*** Court explained:

> [T]he Guidelines provide that: "[i]mputing additional gross income to a parent is appropriate . . . [i]f a parent has been determined by a tribunal to be willfully and/or voluntarily underemployed or unemployed." Tenn. Comp. R. & Regs. 1240–2–4–.04(3)(a)(2)(i). However, to trigger this portion of the child support guidelines and "[t]o calculate a child support award based on earning capacity rather than actual net income, *there must be a threshold finding that the obligor parent is willfully and voluntarily underemployed or unemployed.*" ***Marcus v. Marcus***, No. 02A01-9611-CV-00286, 1998 WL 29645, at *3 (Tenn. Ct. App. January 28, 1998) (emphasis added); ***see also Kendle v. Kendle***, No. M2010-00757-COA-R3-CV, 2011 WL 1642503, at *3 (Tenn. Ct. App. April 28, 2011) (citing Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(i)(I)).

***Goodman***, 2012 WL 1605164, at *4. In ***Goodman,*** the trial court had made no finding that the obligor parent was willfully or voluntarily underemployed or unemployed. ***Id.*** at *6. On that basis, the appellate court reversed the award of child support and remanded the case for calculation of child support based on the obligor parent's actual income. ***Id.*** at *6.

In the case at bar, there was no finding that Father was willfully or voluntarily unemployed. From our review of the statement of the evidence, there was no evidence presented that would have supported such a finding as to Father. Father apparently contends that the trial court should have imputed income to Mother, based on her testimony that she expected to be able to return to working minimum wage jobs once she recovered from surgery. However, as with Father, there is no evidence in the record that would support a finding that

Mother was willfully or voluntarily unemployed at the time of trial.[5] Considering the evidence overall, we are left with little choice but to vacate the trial court's award of child support.

Father also argues that the trial court erred in finding a child support arrearage of $1,430, with $1,000 credit toward this amount, reflecting the payment made by Father the day before the trial, after selling the inventory from his defunct business. He contends that the evidence adduced at trial supported a finding that he was current on his child support obligation as of the day of trial.

The statement of the evidence prepared by the trial court contains the following description of Mother's testimony at trial: "[Father] was behind in his child support in the amount of one thousand ($1000) dollars until the day before the hearing, when he paid all of his child support arrearage." Father likewise testified that he had brought his child support current as of the date of trial. We agree with Father that the undisputed evidence at trial establishes that Father did not have an arrearage as of the date of trial. Therefore, we must vacate this holding as well.

### CONCLUSION

In sum, we affirm the award of alimony; vacate the parenting plan, the award of child support, and the award of a child support arrearage; and remand for a new determination of the parties' parenting plan and for further proceedings consistent with this Opinion. On remand, the trial court is charged with reconsidering the entire parenting plan, including child support. In light of the passage of time and the nature of the case, the trial court may, in its discretion, consider additional evidence. "[E]vents and lives have not stood still while this custody dispute has been in the courts." *Wall v. Wall,* No. W2010-01069-COA-R3-CV, 2011 WL 2732269, at *26 (Tenn. Ct. App. July 14, 2011) (quoting *Gorski v. Ragains*, No. 01A01-9710-GS-00597, 1999 WL 511451, at *4 (Tenn. Ct. App. July 21, 1999)); *see also Hawkins v. O'Brien*, No. M2008-02289-COA-R3-CV, 2009 WL 2058802, at *6 (Tenn. Ct. App. July 15, 2009).

---

[5]Mother did not testify that she intended to immediately return to work after recovering from surgery. In light of the age of the parties' child, considerations such as any costs associated with child care would have to be factored into such a decision.

The decision of the trial court is affirmed in part, vacated in part, and remanded for further proceedings.  Costs on appeal are assessed one-half to Appellant Daniel Adam Barnes and his surety, and one-half to Appellee Chelsea Samantha Barnes, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE