IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Briefs November 30, 2012

## LEO HOLT v. ALMA JEAN HOLT

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-000498-10      Robert S. Weiss, Judge**

---

**No. W2012-00265-COA-R3-CV - Filed April 15, 2013**

---

This is an appeal from a divorce action in which the trial court ordered Husband to pay Wife alimony *in futuro* and alimony *in solido*. The trial court refused, however, to order Husband to pay for the costs of providing COBRA benefits for Wife. Husband and Wife appeal. After thoroughly reviewing the record, we affirm in part and reverse in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part, Reversed in part & Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Eugene G. Douglass, Bartlett, Tennessee, for the appellant, Leo Holt.

Felicia Corbin Johnson, Memphis, Tennessee, for the appellee, Alma Jean Holt.

### OPINION[1]
### I. Background and Procedural History

On December 11, 1987, Leo Holt ("Husband") and Alma Jean Holt ("Wife") were married. Husband has a Bachelor of Arts in Business Administration and a Bachelor of

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Science in Religion and his Masters in Theology. Wife has a Masters in Biblical Studies and her doctorate in Ministry. In 1989, Husband and Wife started a nondenominational church in Memphis, Tennessee. Since its inception, the church has grown substantially both in terms of membership and the physical size of the church which is now housed in a multi-million dollar building.

On March 25, 2009, Husband initially filed for divorce against Wife in the Circuit Court of Shelby County. After conducting a trial on the matter, however, the case was dismissed based on Husband's failure to establish grounds for divorce. Shortly thereafter, on February 3, 2010, Husband re-filed for divorce alleging inappropriate marital conduct and irreconcilable differences. On March 16, 2010, Wife filed an answer and counter-complaint for divorce against Husband alleging inappropriate marital conduct, abandonment, and cruel and inhuman treatment. After Husband filed an answer to the counter-complaint, Wife filed a motion for temporary spousal support on June 21, 2010. Thereafter, on July 14, 2010, the Divorce Referee awarded temporary support to Wife in the amount of $3,300 per month and further ordered Husband to continue to pay the parties' bills. The trial court agreed, and on March 15, 2011, ordered the same by entry of its order on the Divorce Referee's ruling.

After extensive litigation, on July 28, 2011, the parties stipulated that grounds for divorce existed pursuant to Tennessee Code Annotated section 36-4-129. Thereafter, the trial court conducted several bifurcated hearings on the parties' complaints for divorce which took place on August 1, September 23 and 28, October 12, and November 3, 2011. Thereafter, on December 13, 2011, the trial court entered its final decree of divorce. The trial court ordered, in relevant part, as follows: awarded Wife her marital portion of Husband's pension in the amount of $274.82 per month; awarded Wife alimony *in solido* in the amount of $29,700 based on Husband's failure to make mortgage payments on the parties' marital residence; awarded Wife alimony *in futuro* in the amount of $2,500 per month; declined Wife's request that Husband be required to pay for the costs of providing her COBRA benefits; and awarded Wife $10,000 in attorney's fees as alimony *in solido*. Subsequently, Husband and Wife each timely filed a notice of appeal to this Court.

## II. Issues Presented

Husband presents the following issues, as restated and consolidated, for our review:

(1)     Whether there the trial court erred by awarding Wife alimony *in solido* in the amount of $29,700, and

(2)     Whether the trial court erred by awarding Wife alimony *in futuro* in the amount of $2,500 per month.

In addition, Wife presents the following issues, as restated, for our review:

(1)     Whether the trial court erred by refusing to order Husband to pay for the costs of providing COBRA benefits for Wife,

(2)     Whether the trial court erred in its alimony *in solido* award by only ordering Husband to pay one-half of her attorney's fees, and

(3)     Whether the trial court erred by refusing to consider income generated through the church when making its determination of alimony and its distribution of the marital estate based on the theory that the church was an alter ego of Husband.

### III.  Standard of Review

It is well settled that a trial court's decision regarding an award of spousal support is factually driven and involves the careful balancing of many factors. *Robertson v. Robertson*, 76 S.W.3d 337, 340-41 (Tenn. 2002); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001). "[T]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (quoting *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006)).  We decline to second-guess a trial court's decision to award spousal support absent an abuse of discretion.  *Id.* (citing *Robertson*, 76 S.W.3d at 343).  A trial court abuses its discretion when it "causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)).  This standard does not permit an appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).  Rather, "[u]nder the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to propriety of the decision made.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)).  We review the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).  No presumption of correctness attaches to the trial court's conclusions of law, however, and our review is *de novo*. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

## IV. Analysis

We begin our analysis by addressing Wife's argument that the trial court erred by refusing to consider income generated through the church when making its determination of alimony and its distribution of the marital estate based on the theory that the church was an alter ego of Husband. However, Wife failed to cite any applicable law or form any legal argument in her brief to support this contention. As we recently stated in *Forbess v. Forbess*, 370 S.W.3d 347 (Tenn. Ct. App. 2011):

> This court has repeatedly held that a party's failure to cite authority for its arguments or to argue the issues in the body of its brief constitute a waiver on appeal. *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (failure "to cite to any authority or to construct an argument regarding [a] position on appeal" constitutes a waiver of the issue); *Bean v. Bean*, 40 S.W.3d 52, 55–56 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.").

*Id.* at 355; *see also Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001) ("Where a party makes no legal argument and cites no authority in support of a position, such issue is deemed to be waived and will not be considered on appeal.") (citing *Branum v. Akins*, 978 S.W.2d 554, 557 n.2 (Tenn. Ct. App. 1998); *see also Morris v. Snodgrass*, 886 S.W.2d 761 (Tenn. Ct. App. 1994); *Maryville Housing Authority v. Ramsey*, 484 S.W.2d 73 (Tenn. Ct. App. 1972)). Therefore, because Wife failed to cite any applicable law or provide any legal argument to support this position, we conclude that this issue is waived.[2]

### A. Alimony *In Solido*

Next, we shall address whether the trial court erred in its award of alimony *in solido* in favor of Wife. Husband argues that the trial court erred by ordering him to pay Wife $29,700 in alimony *in solido* based on his failure to make mortgage payments on the parties' marital residence. On the other hand, Wife argues that the trial court acted within its

---

[2]Wife also argues in the "Conclusion" section of her brief that Husband should be required to obtain life insurance naming Wife as the sole irrevocable beneficiary as part of his alimony obligation. However, Wife failed to designate this as an issue in her brief. "We may consider an issue waived where it is argued in the brief but not designated as an issue." *Forbess v. Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) (citing *Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002); Tenn. R. App. P. 27(b) (requiring that an appellee who requests affirmative relief must include "the issues and arguments involved in his [or her] request for relief" in the appellee brief)). Accordingly, we conclude that this issue is waived.

discretion by awarding her alimony *in solido* in the amount of $29,700, but further argues that the trial court erred by only awarding her one-half of her attorney's fees as additional alimony *in solido*.

In *Gonsewski v. Gonsewski*, 350 S.W.3d 99 (Tenn. 2011), the Tennessee Supreme Court explained that:

> [A]limony in solido, is also a form of long-term support. The total amount of alimony in solido is set on the date of the divorce decree and is either paid in a lump sum payment of cash or property, or paid in installments for a definite term. Tenn. Code Ann. § 36–5–121(h)(1); *Broadbent*, 211 S.W.3d at 222 ("Alimony in solido consists of a definite sum of money that is paid in a lump sum or in installments over a definite period of time."). "A typical purpose of such an award would be to adjust the distribution of the parties' marital property." *Burlew*, 40 S.W.3d at 471. Alimony in solido "may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." Tenn. Code Ann. § 36–5–121(d)(5). Unlike alimony in futuro, the other form of long-term support, alimony in solido is considered a final judgment, "not modifiable, except by agreement of the parties," and does not terminate upon the death or remarriage of the recipient or payor spouse. Tenn. Code Ann. § 36–5–121(h)(2)–(3); *see Riggs* [*v. Riggs*], 250 S.W.3d [453,] 456 n. 3.

*Id.* at 108.

The trial court's final decree provides that "Wife is awarded $29,700.00 as *alimony in solido* which represents the 9 months of mortgage payments Husband failed to make on the marital residence from October, 2009 until foreclosure. Said sum shall be paid at no interest at the rate of $500.00 per month beginning in December, 2011." In arriving at this conclusion, the trial court made the following oral rulings:

> The [marital residence] was purchased for $490,000 with $70,000 down. Mortgage was paid by husband until October 2009, at which time husband moved out. Unfortunately, when husband moved out he stopped paying anything towards the marital residence and the mortgage company in turn began foreclosure proceedings.
>
> While husband did contact a realtor and attempt to relieve the parties of this obligation, it was unsuccessful. Wife, however, in addition, just ignored the realities of the situation or refused to cooperate with the realtors, which

contributed to the property being foreclosed. A request that the house be merely repurchased from the bank completely ignores the economic realties of these parties to sustain that notion.

However, while husband claims he stopped paying the mortgage due to a drop in his income, he was still grossing in excess of $100,000 a year between his pension and church salary. While there was some testimony that a suit is pending in Chancery regarding debt deficiency from the mortgage, no proof was ever presented regarding what that amount was.

. . . .

With regards to alimony in solido, I'm going to award wife $29,700 in alimony in solido, which represents the nine months of mortgage payments which husband just failed to make. This should be paid in installments of $500 per month until the balance is paid in full.

After thoroughly reviewing the record, we conclude that the trial court abused its discretion by awarding Wife alimony *in solido* in the amount $29,700. We are unable to find any support for the trial court's determination. Wife did not seek alimony *in solido* based on Husband's missed mortgage payments. Nor is there any indication from the record that the trial court's intent behind its award of alimony *in solido* was an attempt to adjust the distribution of the parties' marital estate. The trial court simply concluded that, due to Husband's failure to pay nine consecutive mortgage payments, Wife was entitled to the amount of those missed payments as alimony *in solido*. Absent any evidence or findings of dissipation by Husband, there is no basis for the trial court's award of alimony *in solido* based on Husband's missed mortgage payments. Therefore, we reverse the judgment of the trial court awarding Wife alimony *in solido* in the amount of $29,700.

In addition to the award of $29,700 in alimony *in solido*, the trial court also awarded Wife approximately one-half of her attorney's fees as alimony *in solido* in the amount of $10,000. Specifically, the trial court concluded as follows regarding Wife's attorney's fees:

With regards to the request for attorneys fees, there was an affidavit filed with this Court seeking approximately $20,000 in attorney's fees. Again, the problem in this case is that there just aren't any assets. I mean, the house is gone, for, you know, whatever reason. Both parties testified that they pawned or frittered away, you know, the assets that they had in their possession. Mrs. Holt testified that she gave away $18,000 in furs for far out less than valued. Again, there was just no proof of what she actually got for

it and there is no proof of what Mr. Holt got for his watch, and I didn't have anything to base it on.

So, with regards to the attorney's fees, I will award wife as alimony in solido, attorney's fees in the amount of $10,000, and that payment shall be worked out between the parties.

On appeal, Wife argues that the trial court erred in this regard and instead should have awarded her the entire amount of her attorney's fees and expenses which were approximately $20,000.

The decision to award attorney's fees as an award of alimony *in solido* lies within the discretion of the trial court, and this Court will not reverse the award absent an abuse of discretion. *See Fickle v. Fickle*, 287 S.W.3d 723, 737 (Tenn. Ct. App. 2008). It appears from the record that the trial court properly considered the totality of the circumstances between the parties in arriving at its decision to award Wife one-half of her attorney's fees. We must affirm the trial court's ruling "'so long as reasonable minds can disagree as to propriety of the decision made.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). We are unable to find any abuse of discretion in this matter. Therefore, we affirm the judgment of the trial court awarding Wife one-half of her attorney's fees as alimony *in solido* in the amount of $10,000.

### B. Alimony *In Futuro*

Husband argues on appeal that the trial court erred in awarding Wife alimony *in futuro* in the amount of $2,500 per month. Tennessee Code Annotated section 36-5-121 provides courts discretion to award spousal support "according to the nature of the case and the circumstances of the parties." Tenn. Code Ann. § 36-5-121(a) (2010). Although there is a legislative preference for awarding rehabilitative alimony, "when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible," an award of alimony *in futuro* is warranted. Tenn. Code Ann. § 36-5-121(f)(1). In other words, alimony *in futuro* is appropriate when a

disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse.

*Id.* When determining whether to award spousal support and the nature, amount, and duration of such support, courts consider several factors, including:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
> (3) The duration of the marriage;
> (4) The age and mental condition of each party;
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
> (7) The separate assets of each party, both real and personal, tangible and intangible;
> (8) The provisions made with regard to the marital property, as defined in § 36-4-121;
> (9) The standard of living of the parties established during the marriage;
> (10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
> (12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i)(1)-(12)(Supp. 2012). The two most important factors relating to a trial court's award of alimony are the need of the economically disadvantaged spouse and the obligor spouse's ability to pay. *See Watson v. Watson*, 309 S.W.3d 483, 497-98 (Tenn. Ct. App. 2009) (citation omitted); *Williams v. Williams*, 286 S.W.3d 290, 295-96 (Tenn. Ct. App. 2008) (citations omitted).

In its final decree, the trial court made the following findings regarding its award of alimony *in futuro*:

With regards to alimony, the Court considered all of the factors of T.C.A. §36-5-121 (i). Both parties have approximately the same education with the Husband having a degree from Friendship University in Biblical Scholarship and Wife has a doctorate from Friends Christian University. The parties were married 24 years and although they are getting old and having ailments, there was no proof that age or medical condition prohibited employment nor was there any proof of physical disability or incapacity. The separate assets of each party was not an issue and provisions were made with regards to marital property. At the peak of their earnings, the parties were jointly making approximately $13,000.00 per month. The parties continued to live at that level which became unsustainable for either of them and the Court determines that the standard of living is not a significant factor. Relative fault was not a consideration as both parties were at fault on some level and tax consequences were not an issue. Husband is the minister at Grace Fellowship Christian Church and works full time and has better earning capacity than Wife. Wife has the ability to work but has not made a serious effort to find employment since the filing of this divorce. Wife has shown a certain level of need and Husband has the ability to pay.

. . . .

Husband shall pay Wife $2,500.00 per month as *alimony in futuro* beginning in December, 2011. Husband has been paying alimony pendente lite on or about the 21st day of each month and will continue to make the alimony payments hereunder on or about the same date and they will not be deemed late until after the 26th.

Additionally, the trial court made the following oral rulings which were incorporated into the final decree:

While both parties have degrees from Friendship University in biblical scholarship, and wife has a doctorate from Friends Christian University, I'm going to find that husband has a far greater role of earning capacity in that he is the lead pastor at Grace Christian Fellowship Church, and at this time wife does not have that means or ability.

Roles of education. The parties have approximately the same education.

Duration of Marriage. This is a 24-year marriage and there's, obviously, consideration. The age and mental condition of each party, while there was testimony that both parties are getting old and having ailments, there

-9-

was no proof that age or medical condition was a factor, nor was there any proof that physical condition or physical disability or incapacity was a consideration.

Number six, extent. It would be undesirable to seek employment outside because of minor child, obviously, is not relevant in this case.

Separate assets of each party was not an issue. Provisions were made with regards to marital property, parties didn't have anything to divide.

Standard of living. I think the testimony was clear that the parties were, in their salad days, between the two of them they were earning, approximately, about $13,000 a month between wife's $4500 a month and Pastor Holt's pension and his salary from Grace Christian Fellowship. Unfortunately, when those amounts declined they continued to live at that level, which was unsustainable, and it was unsustainable for either one of them. So the standard of living is not a significant factor that the Court is considering. Wife did help to support Pastor Holt, Mr. Holt, in his leadership of Grace Christian Fellowship Church.

Relative faults was not a consideration. Both parties were at fault on some level, and tax and consequences was not an issue.

For all that considered, wife is awarded $2500 a month in alimony in futuro.

Upon review of the record, we find no abuse of discretion in the trial court's decision to award Wife alimony *in futuro*. In arriving at its decision, the trial court properly considered the relevant factors set forth at Tennessee Code Annotated section 36-5-121(i). At the time of trial, Husband was 64 years old, and Wife was 57 years old. During the parties' twenty-four year marriage, Wife worked alongside Husband in order to grow and develop the church they established together in 1989. In January 2010, however, Wife was fired from her position at the church and was still unemployed at the time of trial.[3] Thus, Wife has a definite need for support. On the other hand, Husband continues to serve as the pastor of the church earning a substantial income, while also receiving monthly pension benefits from the City of Memphis. In fact, Husband's figures illustrate his ability to pay support to Wife given that his income exceeds $9,000 per month. A relative economic disadvantage undoubtedly exists between the parties. While Wife will hopefully secure some form of employment in the future, it is unlikely that she will ever be able to attain a standard of living that is reasonably comparable to that enjoyed by the parties during the marriage, or to that enjoyed by Husband post-divorce. Accordingly, we affirm the trial court's decision to award Wife alimony *in futuro* in the amount of $2,500 per month.

---

[3]In her brief, Wife states that Husband fired her from her position at the church. Husband states, however, that the decision to fire Wife was made by the Board of Deacons at the church.

## C. COBRA Benefits

Finally, we address Wife's argument that the trial court erred by refusing to order Husband to pay for the costs of providing COBRA benefits for Wife. Pursuant to Tennessee Code Annotated section 36-5-121(k), "[t]he court may direct a party to pay the premiums for insurance insuring the health care costs of the other party, in whole or in part, for such duration as the court deems appropriate." An order to pay health insurance premiums is regarded as a form of alimony subject to the provisions contained in section 36-5-121. *See Guiliano v. Guiliano*, No. W2007-02752-COA-R3-CV, 2008 WL 4614107, at *4 (Tenn. Ct. App. Oct. 15, 2008) (citing *Dospil v. Dospil*, No. M2006-01596-COA-R3-CV, 2007 WL 3332849, at *8 (Tenn. Ct. App. Nov. 8, 2007) (*no perm. app. filed*)). We emphasize, however, that the abuse of discretion standard "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (citations omitted). Therefore, viewing the entire record before us in the light most favorable to the trial court's decision, *Id.* (citations omitted), we are unable to conclude that the trial court abused its discretion by refusing to order Husband to pay for the costs of providing COBRA benefits for Wife.

## V. Conclusion

For the foregoing reasons, we affirm in part and reverse in part. Costs of this appeal are taxed equally to the Appellant, Leo Holt, and his surety, and the Appellee, Alma Jean Holt, and her surety,[4] for all of which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

---

[4]Wife also filed a Notice of Appeal with surety.

-11-