IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 13, 2022 Session

FILED
11/16/2022
Clerk of the
Appellate Courts

# FARM CREDIT LEASING SERVICES CORP. v. JEFFREY DANIELS

**Appeal from the Chancery Court for Lauderdale County**
**No. 15860     William C. Cole, Chancellor**

————————————————————

**No. W2020-01576-COA-R3-CV**

————————————————————

Lessee disputes the trial court's denial of his emergency motion to continue leasing company's summary judgment hearing. Lessee also appeals the trial court's grant of summary judgment for leasing company, despite not responding to discovery requests or submitting evidence in opposition to summary judgment. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

J. STEVEN STAFFORD, P. J., W.S. delivered the opinion of the court, in which W. NEAL MCBRAYER and KENNY ARMSTRONG, JJ., joined.

Daniel Lofton, Memphis, Tennessee, for the appellant, Jeffrey Daniels.

Henry C. Shelton, III, Memphis, Tennessee, and Andrew J. Scavotto, St. Louis, Missouri, pro hac vice, for the appellee, Farm Credit Leasing Services Corporation.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

This case stems from the leasing of farm equipment between Plaintiff/Appellee Farm Credit Leasing Services ("FCL") and Defendant/Appellant Jeffrey Daniels ("Appellant"). FCL filed its complaint with the Chancery Court of Lauderdale County ("the trial court") on January 22, 2019, alleging breach of contract and, alternatively, unjust enrichment. Noting that Appellant did not appear to dispute FCL's request for expedited relief under Tennessee Code Annotated section 29-30-106, the trial court granted FCL a

writ of possession.

Appellant filed his answer on May 17, 2019. Therein, Appellant raised the affirmative defenses that "[t]he underlying contract was procured through criminal fraud, fraud in the inducement and fraud in the factum and [is] void and/or voidable,"[1] and "[t]he underlying contract is void as the consideration for the same does not exist. [I]n other words, the goods were never delivered and no money is owed on an unperformed contract." Appellant went on to admit that he "[did] possess the equipment and [was] ready[,] willing[,] and able to return the same," and that the documents spoke for themselves. After posting a bond, FCL took possession of the equipment in June 2019.

On April 7, 2020, FCL filed a motion for summary judgment, a memorandum of law, and a statement of undisputed material facts. FCL alleged that it had established the elements of its claims beyond dispute and that Appellant's affirmative defenses were insufficient to avoid summary judgment. Specifically, FCL alleged as follows in its statement of undisputed material facts:

## The Master Lease

3. On or about March 27, 2017, [Appellant] entered into a master equipment lease agreement with FCL as evidenced by that certain Lease Agreement dated March 27, 2017, executed and delivered by [Appellant] in favor of FCL (the "Master Lease"), for the purpose of leasing certain equipment[.]

4. The Master Lease provides that [Appellant] shall be in default if he fails to make agreed-upon payments, among other actions or omissions.

5. Paragraph 19 of the Master Lease further provides that upon a default, FCL shall have the right, in its sole discretion to exercise its remedies, which include declaring the entire amount of rental and other charges due for the entire Lease Term immediately due and payable; taking immediate possession of any and all Equipment without notice; selling or leasing any Equipment or otherwise disposing, holding, or using such Equipment at FCL's sole discretion; among other rights and remedies.

## The Sprayer Schedule

6. On or about March 27, 2017, [Appellant] entered into a lease schedule with FCL in connection with the Master Lease, as evidenced by that certain

---

[1] Appellant indicated in his answer that he would be attaching a plea agreement from the federal fraud case involving Charles Schindler, an equipment broker with whom Appellant met with in relation to the equipment at issue, but no such document is in the record before us.

Schedule A identified as contract 001-0085042-000 dated on March 27, 2017, executed and delivered by [Appellant] in favor of FCL (the "Sprayer Schedule"), for the purpose of leasing a 2017 HARDI Sprayer with a 120' boom, model Saritor 5000, serial number 0314104240 (the "Sprayer")[.]

7. Pursuant to the Sprayer Schedule, [Appellant] agreed to make one payment of $82,484.64 in April 2017, followed by five consecutive annual payments of $37,484.64 commencing in April 2018.

. . .

10. [Appellant] failed to adhere to his payment obligations under the Sprayer Schedule and is in default.

11. Accordingly, and pursuant to the terms and conditions set forth in the Master Lease, FCL is entitled to recover the amounts due under the terms of the Sprayer Schedule, as of March 4, 2020, of not less than $327,015.36, in addition to prejudgment interest, costs, legal expenses and reasonable attorneys' fees incurred.

**Delivery and Acceptance**

. . .

17. In connection with the Lease, [Appellant] signed a Delivery and Acceptance Certification on April 11, 2017, certifying to FCL that the Equipment had been delivered and accepted (the "Certification).

18. In the Certification, [Appellant] verified that he had fully inspected the Equipment to his "complete satisfaction."

19. [Appellant] verified that he accepted "full responsibility for the Property 'AS IS' and 'WHERE IS,' including (without limitation) the acceptance of full responsibility for any necessary delivery and/or installation thereof."

. . .

**[Appellant's] Defaults**

22. As a consequence of [Appellant's] defaults, [FCL] issued a Notice of default to [Appellant] on August 23, 2018.

23. [Appellant] ignored [FCL's] correspondence and failed to cure the

defaults.

24. FCL accelerated the remaining amounts due pursuant to the terms and conditions set forth in the Leases.

25. On June 30, 2019, FCL repossessed the Equipment and sold it at auction on February 19, 2020 for a net profit of $36,103.78.

. . .

29. After accounting for the sale, the total amounts due under the Lease, as of March 4, 2019, is $327,015.36, plus prejudgment interest, costs, legal expenses and reasonable attorneys' fees incurred.

(Citations omitted). FCL also described its filing of a UCC-1 Financing Statement regarding the lease with the Tennessee Secretary of State on April 13, 2017, the damaged condition of the equipment upon repossession, and the reasonableness of its sale of the equipment. FCL further stated that it had served discovery requests, including requests for admission, on Appellant in March 2019. Because Appellant did not respond to the requests, FCL argued that, pursuant to Tennessee Rule of Civil Procedure 36.01, the requests should be deemed admitted. FCL cited to both the requests and an affidavit from Barrett Kranz, a senior special assets officer with FCL, to provide support for the allegations within the statement of undisputed material facts, with the referenced documents attached as exhibits.

Appellant did not file a response to FCL's motion for summary judgment nor contest the statement of undisputed material facts. A hearing on FCL's motion for summary judgment was first scheduled for June 2, 2020. Pursuant to Appellant's request, the hearing was rescheduled for August 4, 2020. Then, at 12:17 AM on the day of the rescheduled hearing, Appellant's counsel emailed the court clerk an emergency motion to continue, which was formally filed at 9:18 AM that morning. In the motion, Appellant's counsel requested a two-week continuance "to allow additional time to prepare a response" based on the "extraordinary measures" being taken after his law partner's July 20, 2020 COVID-19 diagnosis, "including: quarantining from the physical office, and managing additional casework[.]"

The trial court proceeded with the scheduled hearing and Appellant's counsel failed to appear. After hearing from FCL, the trial court orally denied Appellant's emergency motion and granted summary judgment for FCL. Before a written order could be entered, however, Appellant filed a motion "to Set Aside Judgment or Alternatively to Alter or Amend Judgment Pursuant to T.R.C.P. 62.02 and T.R.C.P. 59.01" on September 17, 2020.[2]

---

[2] Appellant's motion indicated that FCL had circulated a draft order in which Appellant's emergency motion for a continuance was denied and summary judgment was granted to FCL.

Appellant pointed to the federal judgment against Charles Schindler and a restitution order granted in favor of FCL, which Appellant asserted constituted the money allegedly owed by Appellant. Appellant argued that "[t]here is no joint and several liability alleged in [FCL's] complaint nor is that possible in this case. The restitution judgment predates and supersedes the instant judgment such that it is not possible for it to have prospective application[.]" Appellant therefore argued that "Rule 62.02(4) allows a set aside" of the trial court's order. Appellant also cited to "the catch-all provisions of T.R.C.P. 62.02(5)" in requesting the trial court to "reconsider its ruling and set aside the judgment."[3] Finally, Appellant asked the trial court to make a finding of fact pursuant to Rule 59.04, in order to "explain—with judicial notice of the Schindler crimes, and with judicial notice of the conviction[—how it] can nevertheless assert that no genuine issue of material fact exists as to the transaction in question." In response, FCL argued that Appellant had raised no law or material fact sufficient to justify altering or amending the judgment.

On September 30, 2020, the trial court entered its written order denying Appellant's emergency motion for a continuance and granting FCL's motion for summary judgment. Therein, the trial court noted that Appellant had previously been granted a continuance but had never responded to FCL's motion for summary judgment or requests for admission. As a result, the trial court found that FCL's motion was well-taken and that FCL was entitled to a total judgment of $342,044.10, "consisting of the amounts due and owing under the Lease Agreement at issue, and [FCL's] attorneys' fees and costs."

Appellant's motion to set aside was called for hearing on October 20, 2020. Appellant failed to appear.[4] In its November 20, 2020 order denying the motion, the trial court outlined Appellant's failure to (1) respond to FCL's motion for summary judgment; (2) attend the summary judgment hearing; (3) attend the hearing on Appellant's motion to alter or amend; and (4) inform either the trial court or FCL of his intention to not appear. The trial court denied Appellant's motion. Appellant appealed.

## II. ISSUES PRESENTED

As stated in his brief, Appellant raises the following issues for our review:

---

[3] Rule 62.02 of the Tennessee Rules of Civil Procedure governs execution on judgments when certain specified motions are filed. It appears that Appellant was attempting to cite Rule 60.02 of the Tennessee Rules of Civil Procedure, which governs motions to set aside final judgments, i.e., judgments for which the time has passed to appeal. Of course, Rule 60.02 was the not the correct rule either, as no final judgment had yet been entered. Appellant's motion would have more correctly been filed under either Rule 59.04 (governing motions to alter or amend) or even Rule 54.04 (governing revision of non-final judgments), given that no written order had been entered when Appellant filed his motion. Appellant has not appealed the denial of this motion, so the question of the proper rule governing it need not be decided in this appeal.

[4] No explanation was ever provided for this failure.

1.       Whether the Trial Court erred in granting summary judgment in favor of [FCL] as it neither rendered any factual determination nor made any legal analysis on [Appellant's] properly asserted affirmative defenses.

2.       Whether the Trial Court erred in denying [Appellant's] properly filed Emergency Motion to Continue Hearing on [FCL's] Motion for Summary Judgment as it neither rendered any factual determination nor made any legal analysis under T.R.C.P. 6.02.

In addition to refuting Appellant's assignments of error, FCL raises a separate issue concerning its entitlement to attorney's fees in defending against a frivolous appeal.[5]

### III. ARGUMENT

### A.

We begin with Appellant's second issue because its outcome largely determines the success of Appellant's first argument. As an initial matter, we note that Appellant frames this issue as one involving a motion to continue the hearing. Indeed, Appellant's August 4, 2020 motion is captioned as an emergency motion to continue. In his appellate brief, however, Appellant frames his motion not merely as a motion to continue the hearing but also as a motion seeking an enlargement of time in which to file a response to FCL's motion for summary judgment under Rule 6.02 of the Tennessee Rules of Civil Procedure. Appellant's choice to frame his argument in this matter is no doubt strategic, as a short continuance of the hearing may not have been sufficient to enable Appellant to file a response to the motion for summary judgment. And as detailed infra, Appellant had little hope of avoiding summary judgment in the absence of a response. Specifically, Appellant takes issue with the trial court's failure to "make any analysis under [] Rule [] 6.02."

Rule 6.02 provides disparate rules regarding how a party may obtain an enlargement of time to meet a deadline set by a rule, statute, or court order depending on when the request is made. If the request is made before the expiration of the subject deadline, the trial court may grant the request "with or without motion or notice[.]" Tenn. R. Civ. P. 6.02. If, however, a party is seeking an enlargement of time to meet a deadline "after the expiration of the specified period" in which the act was to be performed, the trial court may, in its discretion, grant the request only "upon motion . . . where the failure to act was the result of excusable neglect." Tenn. R. Civ. P. 6.02. There is no dispute that to the extent this issue was properly raised at all, only the latter, more limited situation is at issue in this appeal. *See also* Tenn. R. Civ. P. 56.04 (giving non-moving parties until five days in

---

[5] Although the lease agreement between the parties contains an attorney's fees provision, FCL only requests its appellate fees based on frivolous appeal pursuant to Tennessee Code Annotated section 27-1-122.

advance of a scheduled hearing to respond to a motion for summary judgment).

In asserting that the trial court failed to make an analysis under Rule 6.02, we assume that Appellant is referring to the following factors, which generally govern the question of whether excusable neglect has been shown: "(1) the risk of prejudice to parties opposing the late filing, (2) the delay and its potential impact on proceedings, (3) the reasons why the filings were late and whether the reasons were within the filer's reasonable control, and (4) the good or bad faith of the filer." *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 551 (Tenn. 2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)). A trial court's decision to grant or deny a motion under Rule 6.02 is reviewed for an abuse of discretion. *Id.* This standard does not permit an appellate court to substitute its judgment for that of the trial court. *Milan Supply Chain Sols., Inc. v. Navistar, Inc.*, 627 S.W.3d 125 (Tenn. 2021) (citations omitted). Instead, "[a]n abuse of discretion occurs when a trial court 'applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining.'" *Id.* (citing *Borne v. Celadon Trucking Servs., Inc.*, 532 S.W.3d 274, 294 (Tenn. 2017)).

It is axiomatic, however, that arguments may not be raised for the first time on appeal. *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010) (citations omitted). Moreover, this Court merely corrects errors committed by trial courts. *McCormick v. McCormick*, No. W2019-00647-COA-R3-CV, 2020 WL 1042500, at *4 (Tenn. Ct. App. Mar. 4, 2020) (citing *Mosley v. State*, 475 S.W.3d 767, 774 (Tenn. Ct. App. 2015)). Respectfully, Appellant's vague and confusing trial court motion does not cite Rule 6.02 or mention excusable neglect. Instead, Appellant's motion only makes a perfunctory reference to the need for a continuance to "prepare a response[,]" presumably to the summary judgment motion, and argues that FCL will not be prejudiced by the delay.[6] The trial court cannot commit an error by failing to undergo an analysis that it is not asked to perform. *Id.* (finding that "the trial court was under no duty [to] 'fill in the gaps' of [w]ife's argument by construing her actual request to modify alimony as in fact a request to interpret the obligation as an allocation of marital debt." (citation omitted)); *cf. State v. Vance*, 596 S.W.3d 229, 253 (Tenn. 2020) ("A trial court cannot evaluate an objection that is not made."). As a result, we have serious doubts that the question of excusable neglect was properly raised before the trial court. *Cf. In re Adoption of E.N.R.*, 42 S.W.3d 26, 32 (Tenn. 2001) (noting that an argument may be waived when it is, inter alia, "minimally addressed").

We need not decide, however, whether Appellant's motion was sufficient to put the trial court on notice that he was seeking an enlargement of time under Rule 6.02 because we nevertheless conclude that, even if properly raised, the trial court did not abuse its

---

[6] Appellant's motion to set aside, alter, or amend the judgment also does not reference excusable neglect.

discretion in denying Appellant's request.[7] Indeed, in addition to Appellant's failure to raise his request in a well-defined manner, the motion, if construed as a request for an enlargement of time to respond to FCL's summary judgment motion, suffers from multiple additional infirmities.[8]

First, we note that while the motion to continue only sought a short continuance, the overall delay in this case was lengthy and pervasive.[9] FCL filed its complaint in January 2019, and Appellant did not file an answer until May 2019. FCL propounded discovery requests on Appellant in March 2019, and Appellant offered no response. FCL's motion for summary judgment was filed in April 2020, and Appellant did not file a response in the two months prior to the initial hearing date of June 2, 2020. The hearing was then continued to August 4, 2020, at Appellant's request. This provided Appellant with an additional month in which to file a response to FCL's motion, and still no response was filed prior to the rescheduled hearing. Neither did Appellant respond to discovery during this period or propound any discovery on FCL.

Thus, by the time that Appellant's counsel's law partner was diagnosed with COVID-19, nearly three and one-half months had elapsed in which Appellant could have responded to the motion for summary judgment and more than a year since this relatively simple breach of contract case had been initiated. No explanation was provided for the failure to prepare a response in this period prior to the "extraordinary measures" taken by

---

[7] The practice of proceeding to address the merits of an issue that is arguably waived has significant support in this State. *See, e.g.*, **Lafarge North America v. Warren Mills et al.**, No. W2020-00959-COA-R3-CV, 2022 WL 704279, at *3 (Tenn. Ct. App. Mar. 9, 2022), *perm. app. denied* (Tenn. Aug. 4, 2022) (noting that an issue may have been waived, but assuming arguendo that the issue was not waived to hold that the issue still lacked merit); **Starr v. State**, No. C.C.A. 89-154-III, 1990 WL 51759, at *1 (Tenn. Crim. App. Apr. 27, 1990) ("Moreover, assuming *arguendo* the inapplicability of the waiver rule, the appellant's issue would be meritless."). We note, however, that the Tennessee Supreme Court has recently cautioned against the intermediate appellate courts addressing issues unless they "were both preserved in the trial court and presented on appeal." **State v. Bristol**, No. M2019-00531-SC-R11-CD, 2022 WL 5295777, at *3 (Tenn. Oct. 7, 2022). When this court considers an unpreserved issue, it must ensure that the parties are afforded "notice and an opportunity to be heard on the matter." *Id.* at *7. The basis of this ruling was that it was unfair to reverse a judgment against a party who had "no inkling that the issue was in play and therefore no reason to develop a record on the issue, research it, or address it in its briefs." *Id.* at *6. In this case, the issue of excusable neglect was briefed by Appellant and FCL was given an opportunity to respond. Moreover, we have ultimately concluded that excusable neglect is not a basis for reversal of the trial court. As such, we conclude that our consideration of this issue does not run afoul of **Bristol**.

[8] We reiterate that at no time did Appellant explicitly ask for an enlargement of time in which to file a response to FCL's motion for summary judgment and cite as the basis for that request excusable neglect. It is undoubtedly the better practice for parties to explicitly ask for the relief they desire. We stress that future litigants should not construe our decision to read Appellant's motion in the best possible light and thus address its merits as an indication that we will be as forgiving of similar deficiencies in the future.

[9] Because Appellant chooses to frame his issue as involving a request for an enlargement of time to respond to the motion for summary judgement, we consider all of the delays in the case and their explanations, rather than merely the need for a continuance of the summary judgment hearing due to the COVID-19 diagnosis.

Appellant's counsel in response to his partner's COVID-19 diagnosis.

Although "[p]rejudice will not ordinarily be presumed merely from the passage of time," ***Douglas v. Est. of Robertson***, 876 S.W.2d 95, 97 (Tenn. 1994), these circumstances indicate that FCL would indeed be prejudiced by the delay the last-minute enlargement of time would create. Specifically, FCL had been waiting months not just for Appellant to respond to the summary judgment motion, but also for Appellant to meaningfully participate in this case at all. Indeed, Appellant's bare and oblique motion provides no indication of how a two-week continuance would allow Appellant to formulate a response rather than continue to prolong the case. *See* ***F & M Bank v. Fleming***, No. M2020-01086-COA-R3-CV, 2021 WL 4438550 (Tenn. Ct. App. Sept. 28, 2021), *perm. app. denied* (Tenn. Jan. 12, 2022) (affirming denial of additional time for discovery when the motion for summary judgment was not heard for nearly three months, during which time the appellant conducted no discovery).

The lack of explanation for the overall delays in the case or for how the enlargement of time would actually result in meaningful action by Appellant is especially important in this case because in addition to Rule 6.02, Appellant's motion must also comply with Rule 56.07 of the Tennessee Rules of Civil Procedure. In particular, Rule 56.07 provides as follows:

> Should it appear from the affidavits of a party opposing the motion that such party cannot for reasons stated present by affidavit facts essential to justify the opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Thus, the trial court may grant a party opposing summary judgment more time to marshal evidence when it is shown to be necessary "from the affidavits" filed by the non-moving party. ***Id.*** A motion for additional time to respond to a summary judgment motion therefore does not comply with Rule 56.07 when it is not accompanied by an affidavit and does not indicate why the evidence needed to oppose the motion had not yet been obtained. *See* ***In re Rhyder C.***, No. E2021-01051-COA-R3-PT, 2022 WL 2837923, at *5 (Tenn. Ct. App. July 21, 2022) ("Mother did not present any affidavits to support her contention that she could not present the facts necessary to justify opposing the motion. Further, her motion failed to explain why the affidavits she needed to oppose the motion could not be obtained. In sum, Mother's motion did not comply with Rule 56.07.").

Appellant's motion, however, was not accompanied by an affidavit or proof of any kind in support of the allegations contained therein. Moreover, neither Appellant's motion to continue nor his motion to alter or amend ever detailed what more Appellant required to be able to properly respond to FCL's motion or why such evidence had not been obtained in the three months that the motion was pending. *Cf.* ***Cardiac Anesthesia Servs., PLLC v.***

*Jones*, 385 S.W.3d 530, 538 (Tenn. Ct. App. 2012) (holding that a trial court only errs in denying a motion for more time to marshal evidence to respond to a summary judgment motion when "the non-moving party can show that 'the requested discovery would have assisted [the non-moving party] in responding to [the moving party's] motion for summary judgment'" (quoting ***Regions Fin. Corp. v. Marsh USA, Inc.***, 310 S.W.3d 382, 401 (Tenn. Ct. App. 2009))). Appellant's course of conduct in refusing to respond to essentially anything and rarely appearing for scheduled hearings suggests that no matter how much time Appellant was given, it was not likely that a sufficient response would ever be forthcoming.[10] Therefore, even if we were to assume that Appellant was acting in good faith in filing his motion, the prejudice to FCL, the delay, and the failure to explain either the overall delay or how the additional time would be used to obtain evidence all weigh in favor of denying Appellant's August 4, 2020 motion.

In sum, Appellant has not shown that the trial court's decision to deny him an eleventh-hour continuance was an abuse of discretion. Instead, this case has been plagued by a lack of diligence by Appellant. Moreover, because Appellant failed to explain how the continuance would allow him to finally respond to the motion for summary judgment in light of his failure to engage in any form of discovery, we have little choice but to conclude that Appellant would be left in the same predicament and the outcome of FCL's motion for summary judgment would not have been altered regardless of any additional time Appellant received. The law, however, does not require the taking of a fruitless act. ***Raht v. Union Consol. Min. Co. of Tennessee***, 73 Tenn. 1, 58–59 (1880) ("The law never requires a useless and fruitless thing to be done, or an unnecessary and meaningless ceremony to be performed."); ***Williams v. Home Fire & Marine Ins. Co. of Cal.***, 25 Tenn. App. 351, 157 S.W.2d 845, 847 (1941) ("[T]he law will not require the doing of a vain or useless thing."). Under these circumstances, Appellant's request to continue the summary judgment hearing in order to be allowed more time to respond to FCL's motion for summary judgment was properly denied. Thus, regardless of whether we treat Appellant's emergency motion as one for enlargement of time or for a continuance, the trial court did not abuse its discretion in denying Appellant's motion. *See **Howell v. Ryerkerk***, 372 S.W.3d 576, 580 (Tenn. Ct. App. 2012) (noting that the analysis and standard of review for determining whether to grant a continuance is similar to the question of whether to grant an enlargement of time).

**B.**

We turn next to the trial court's decision to grant FCL's motion for summary judgment. The grant or denial of a motion for summary judgment is a matter of law; therefore, our review is de novo with no presumption of correctness. *See **Rye v. Women's Care Ctr. Of Memphis, MPLLC***, 477 S.W.3d 235, 250 (Tenn. 2015). As such, this Court

---

[10] As a reminder, Appellant could not even be bothered to appear for a hearing he scheduled on his motion to set aside the grant of summary judgment.

- 10 -

must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.*

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Tenn. R. Civ. P. 56.04). A party bearing the burden of proof at trial who moves for summary judgment may attach a supporting affidavit to its motion but must include "a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "[T]o survive summary judgment, the nonmoving party 'may not rest upon the mere allegations or denials of [its] pleading,' but must respond, and, by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' at the summary judgment stage 'showing that there is a genuine issue for trial.'" *Rye*, 477 S.W.3d at 265 (emphasis omitted) (quoting Tenn. R. Civ. P. 56.06). After the parties have received adequate time for discovery, "summary judgment should be granted if the nonmoving party's evidence at the summary judgment stage is insufficient to establish the existence of a genuine issue of material fact for trial." *Id.* (emphasis omitted) (citing Tenn. R. Civ. P. 56.04, 56.06).

Here, FCL bore the burden of proof at trial. In its motion for summary judgment, FCL alleged that the undisputed facts established a prima facie breach of contract claim. "The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Leedy v. Hickory Ridge, LLC*, No. E2022-00035-COA-R3-CV, 2022 WL 9691763, at *9 (Tenn. Ct. App. Oct. 17, 2022) (quoting *ARC Lifemed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)).

To establish these elements, FCL relied on its statement of undisputed material facts. The statement of undisputed material facts in turn relied on various contractual documents, an affidavit from Mr. Kranz, and Appellant's unanswered requests for admission. At oral argument, FCL conceded that the trial court did not specifically rule that the requests were admitted, but maintained that the requests were properly relied upon. In the alternative, FCL suggested that there was sufficient support for its alleged material facts without reference to the requests for admission. It is true that requests for admission that are not denied are generally deemed admitted. Tenn. R. Civ. P. 36.01 ("The matter is admitted unless, . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter[.]"). In a typical case, however, the trial court specifically rules that requests are admitted. Yet, the trial court did not explicitly deem the requests admitted. Regardless, we agree with FCL that the documents and affidavit submitted in support of its motion are sufficient to establish the material facts without reference to the requests. Specifically, these documents established (1) that there had been an equipment lease between the parties; (2) that Appellant failed to make payments required under the lease; and (3) that there remained a

deficiency after the reasonable sale of the equipment. These facts, if undisputed, establish a breach of contract by Appellant.

Because FCL met its burden at the summary judgment stage, the burden shifted to Appellant to show "a genuine issue for trial." ***Rye***, 477 S.W.3d at 265. Courts have consistently stressed that a party opposing summary judgment may not simply rest on its pleadings, but must affirmatively oppose the motion. *See, e.g.*, ***id.***; ***Holland v. City of Memphis***, 125 S.W.3d 425, 428 (Tenn. Ct. App. 2003); ***Akers v. Heritage Med. Associates, P.C.***, No. M2017-02470-COA-R3-CV, 2019 WL 104130 (Tenn. Ct. App. Jan. 4, 2019). Indeed, Rule 56.03 requires that a party opposing a motion for summary judgment serve and file a response to the motion. *See* Tenn. R. Civ. P. 56.03 ("Any party opposing the motion for summary judgment *must*, not later than five days before the hearing, serve and file a response to each fact set forth by the movant[.]") (emphasis added). The record contains no response filed by Appellant in opposition to the motion.

As Appellant did not challenge FCL's statement of undisputed material facts, the trial court properly determined that these facts were undisputed. *See **Holland***, 125 S.W.3d 425, 428 ("Thus the material facts set forth in the statement of the moving party may be deemed admitted in the absence of a statement controverting them by the opposing party."); ***Brennan v. Goble***, No. E2020-00671-COA-R3-CV, 2021 WL 2156443, *6 (Tenn. Ct. App. May 27, 2021) ("[A] trial court may consider statements of fact as admitted when a non-moving party fails to respond to the moving party's statement of material facts."). As a result, the undisputed material facts showed that Appellant owed an outstanding balance of $327,015.36, plus interest and attorney's fees based on the terms of the equipment lease.

On appeal, Appellant relies on his affirmative defenses to establish that FCL is not entitled to judgment as a matter of law. If, however, Appellant intended to use his affirmative defenses—that the contract was void and/or voidable as being procured through fraud, or otherwise void for lack of consideration—to defeat summary judgment, more needed to be done than merely reciting the defenses in his answer. ***Rye***, 477 S.W.3d at 265 ("The nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.' The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." (quoting ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.***, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986))). At no point in the trial court proceedings did Appellant address how the workings of the federal fraud case, involving the equipment dealer from whom he initially leased the equipment, impacted his alleged breach of contract with FCL. Nor did Appellant explain how "the goods were never delivered," making the contract void for lack of consideration, but still FCL was able to retrieve the equipment from his possession. And he certainly did not present evidence of any kind to support these arguments or his affirmative defenses in general.[11] Rather,

---

[11] Despite Appellant's failure to meet his burden and adequately establish his affirmative defenses,

Appellant did exactly what our supreme court prohibited in *Rye*—he rested solely upon the allegations in his pleadings without submitting proof to show that there was a genuine issue for trial. *See Rye*, 477 S.W.3d at 265; *see also **Tennessee Farmers Mut. Ins. Co. v. Farrar***, 337 S.W.3d 829, 837 (Tenn. Ct. App. 2009) ("[T]he burden of proving an affirmative defense is on the party asserting it."). Therefore, Appellant's failure to respond to the motion for summary judgment or oppose the statement of undisputed material facts, unfortunately, "prove[d] fatal in the trial court and upon appeal." ***Holland***, 125 S.W.3d at 428–29 (citing ***Mark VII Transp. Co. v. Belasco***, No. W2002-00450-COA-R3-CV, 2002 WL 31895714, at * 4–5 (Tenn. Ct. App. Dec. 30, 2002)). The trial court's decision to grant summary judgment to FCL is therefore affirmed.

## C.

FCL also asks for damages incurred in responding to a frivolous appeal under Tennessee Code Annotated section 27-1-122, which provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

"An appeal is frivolous when it 'has no reasonable chance of success' or is 'so utterly devoid of merit as to justify the imposition of a penalty.'" ***Stokes v. Stokes***, No. M2018-00174-COA-R3-CV, 2019 WL 1077263, at *10 (Tenn. Ct. App. Mar. 7, 2019) (quoting ***Chiozza v. Chiozza***, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009)). In that vein, a "a party's failure to point to any evidence or rule of law entitling him or her to relief may be a basis for a court to conclude an appeal is frivolous." *Id.* (citing ***Jackson v. Aldridge***, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999)). An award of appellate attorney's fees is within this Court's sole discretion, though the statute is meant to be applied sparingly "to avoid discouraging legitimate appeals." *Id.* (citing ***Chiozza***, 315 S.W.3d at 493).

Still, here there is no dispute that Appellant failed to provide evidence to support his emergency motion to continue, failed to respond to FCL's motion for summary judgment, failed to properly argue his affirmative defenses, failed to appear for the summary judgment hearing, and then failed to appear for a hearing set on his own motion to alter or amend the judgment. No new law or fact was presented in the motion to set aside the trial court's judgment or in this appeal. "Any objective review of these factors would cause a reasonable person to conclude that [Appellant's] appeal had 'no reasonable chance

---

FCL defended against its understanding of Appellant's argument. Based on the efforts of FCL in developing the defenses and then refuting them, the trial court specifically found that Appellant's affirmative defenses were "insufficient to avoid summary judgment."

of success.'" ***Williams v. Williams***, 286 S.W.3d 290, 298 (Tenn. Ct. App. 2008) (quoting ***Lovelace v. Owens-Illinois, Inc.***, 632 S.W.2d 553, 555 (Tenn. 1982)). It therefore appears that this appeal is frivolous or taken merely for delay. As a result, we exercise our discretion to conclude that this is an appropriate case in which to award FCL damages incurred as a result of defending against this clearly frivolous appeal.

## IV. CONCLUSION

The judgment of the Chancery Court of Lauderdale County is affirmed, and this cause is remanded to the trial court for a determination of the reasonable costs FCL incurred in defending against this appeal and all further proceedings necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellant Jeffrey Daniels, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE