IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 22, 2008 SESSION

# DORIS P. WILLIAMS v. JIMMY D. WILLIAMS

**An Appeal from the Circuit Court for Shelby County**
**No. CT-005319-02      Robert L. Childers, Judge**

---

**No. W2007-00109-COA-R3-CV - Filed July 28, 2008**

---

This is a divorce case. During the course of the parties' long-term marriage, the wife retired from her job as a teacher because of multiple health problems. In the divorce decree, the wife was awarded alimony *in futuro*. The husband filed a motion to alter or amend the judgment, which was denied. The husband appeals the award of alimony *in futuro*, and the denial of his motion to alter or amend. The wife asserts that this is a frivolous appeal. We affirm and find that this is a frivolous appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Affirmed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., joined; W. FRANK CRAWFORD, J., did not participate.

Edward M. Bearman, Memphis, TN, for the Appellant/Defendant, Jimmy D. Williams.

Mitchell D. Moskovitz and Rachel L. Songstad, Memphis, TN, for the Appellee/Plaintiff, Doris P. Williams.

## OPINION

Defendant/Appellant Jimmy D. Williams ("Husband") and Plaintiff/Appellee Doris P. Williams ("Wife") were married on November 10, 1966. Three children were born to the marriage, and all are now adults. Both parties graduated from high school.

The parties separated on September 17, 2002. At that time, Wife was fifty-eight years old, and Husband was fifty-nine years old. The next day, Wife filed a complaint for absolute divorce, alleging irreconcilable differences, inappropriate marital conduct, and adultery by Husband, and seeking alimony and attorney's fees, both *pendente lite* and permanent. On October 4, 2002, Husband filed an answer denying Wife's material allegations against him. He also filed a counter-complaint for divorce against Wife, alleging irreconcilable differences, inappropriate marital conduct, and cruel and inhuman treatment or conduct by Wife toward Husband.

In May 2003, the divorce referee held a hearing on Wife's request for *pendente lite* support. At the hearing, Wife testified that she had worked full-time as a special education assistant with the Memphis City School system, earning approximately $900 per month. She retired in 2002 because of health issues. Wife said that she suffers from arthritis, diabetes, congestive heart failure, high blood pressure, and loss of vision in her right eye.

Husband worked at a newspaper, and ultimately became the owner and publisher of a small newspaper, the Memphis Silver Star News, and the owner of a ballroom business, the Silver Park Plaza Candlelight Ballroom. He is also a practicing minister. Husband asserted that both the newspaper and the ballroom operated at a deficit, and his 2002 income tax return showed a claimed income of $17,000.

The testimony at the *pendente lite* hearing indicated that Husband was in charge of the parties' finances, paying for daily necessaries, housing, and most other bills. Wife testified that Husband was secretive about his finances, and she knew nothing about Husband's business bank accounts.

Husband had several bank accounts for each business, with sole authority to write checks on these accounts. In 2002, from one business account, Husband wrote numerous checks to himself, or to cash, for "business expenses," totaling $197,619. In addition, Husband wrote $42,550 in checks to himself, or to cash, from other business accounts. Husband maintained that he used the funds to pay "business expenses." However, he was unable to recall, or to document, the specific business expenses paid.

After the hearing before the divorce referee, the trial court entered an order setting forth Husband's support obligations pending the trial. The order required Husband to continue to pay certain enumerated expenses. In addition, Husband was ordered to pay Wife $326 per month toward her medical expenses and $225 per month toward her other expenses. Husband was also ordered to pay $1,000 toward Wife's attorney's fees.

In July 2003, Wife filed a contempt petition against Husband, alleging that he had failed to pay the *pendente lite* support ordered by the court. In February 2006, Wife filed a second contempt petition against Husband.

The trial was held on April 24, 2006.[1] While the appellate record does not contain a transcript of the evidence, the trial court approved a Tenn. R. App. P. 24(c) Statement of the Evidence.[2] Much of the evidence presented to the trial judge echoed the evidence presented to the divorce referee at the *pendente lite* hearing. The Statement of the Evidence outlined the evidence presented at trial:

---

[1]The attorneys in this appeal did not represent the parties in the trial.

[2]The Statement of the Evidence was filed on May 15, 2007.

5. On April 19, 2006, Husband filed a Local Rule XIV(C) affidavit with the trial court stating that Husband drew a salary of "approximately $18,000" in 2005 from Husband's business. The evidence shows that Husband is a successful business man. He owns the Memphis Silver Star News, a newspaper, in addition to a ballroom. The proof at trial showed that Husband's business practice consisted of regularly writing himself checks for cash from his business. In 2005 Husband wrote himself over $200,000 worth of checks from his company account. The memo line on said checks simply referred generally to "expenses". Husband testified during the trial that he had documents and/or receipts regarding said expenses in his briefcase, which was in the courtroom. Husband did not, however, provide the trial court any receipts for said expenses. Rather, Husband only had a handwritten list of alleged expenses. Wife testified that Husband controlled the parties' finances during the marriage and was extremely secretive about his business dealings. At trial, Husband admitted that the vehicle he was currently driving was a late-model Cadillac Escalade.

6. The proof at trial showed that Wife had been disabled for two years prior to trial and the only income she was receiving was $454.00 per month in Social Security disability and $34.41 per month from her Memphis City School retirement. The proof also showed that she was having to live with her family because she could not afford to live on her own, that she had no vehicle, and she was required to rely upon her family to transport her. She had three (3) surgeries in 2005, including a heart bypass, removal of a bone in her spine, and total knee replacement. Wife had to liquidate an annuity in her separate name to pay for her medical expenses, and in 2004 she had to file for bankruptcy. Wife's Local Rule XIV(C) affidavit showed a deficit of approximately $1,000 per month. Wife testified that Husband took her personal belongings, including a fur coat and a hat, and sold them and he kept the money.

* * *

8. Wife introduced documents at trial from the Shelby County Register's Office showing that Husband and/or Husband's Company owned real property at 3015 Park Avenue, 3019 Park Avenue and 0 Park Avenue. Husband produced documentation showing that he had obtained mortgages on 3015 and 3019 Park Avenue, which were more than the value of the property. Husband produced no documentation for 0 Park Avenue and denied owning said real property. The trial court used the tax assessment from the Shelby County Assessor's Office to determine that 0 Park Avenue had a fair market value of $19,200. The trial court awarded Wife one-half of

-3-

the value of 0 Park Avenue, $9,560.00, and placed a lien on the property in that amount to protect Wife's one-half interest.

9. The evidence shows the parties owned a home at 5250 Marynelle that they bought in the 1990s for $82,000.00. They sold the house after the divorce was filed to a friend of the parties for $61,000.00. The mortgage on the home at the time of sale was $56,537.00. Husband told Wife that they were going to have to move from the house because it was being foreclosed on. Husband testified that he now rents the house from the friend who bought the house.

* * *

11. During the trial Husband was asked whether he had sexual relations with another woman, other than Wife, during the marriage. Husband responded, "it depends on what you call sex." When directed by the trial court to answer the question Husband denied that he had sexual relations with another woman during the marriage. In Husband's Interrogatory Answers, filed with the trial court on January 7, 2003, Husband admitted to having sex with another woman during the marriage. Husband also admitted to attempting to gain custody of a young child through the Juvenile Court of Shelby County, Tennessee, but denied that the child was born out of wedlock. Rather, Husband testified that he felt sorry for the child and wanted custody.

12. Husband testified that he had a high school education, and that he was trained as a pastor and could work as a pastor in the future.

After the trial, on April 28, 2006, the trial court entered a final decree of divorce. In the final order, the trial court declared the parties divorced and divided the marital property. It found that Wife was disabled and in need of alimony *in futuro*, and that Husband had the ability to pay alimony *in futuro*. Husband was ordered to pay Wife $1,000 per month, terminable only upon Wife's death or further orders of the trial court.[3]

On May 26, 2006, Husband filed a motion to alter or amend the judgment. The motion was denied on January 3, 2007. From this order, Husband now appeals.

On appeal, Husband argues that the trial court erred in ordering him to pay $1,000 per month in alimony *in futuro* to Wife, because he does not have the ability to pay. In addition, he contends that the trial court erred in denying his motion to alter or amend the judgment, which also asserted that he did not have the ability to pay the alimony.

___

[3]As of the date of the final decree, Husband remained in arrears on his *pendente lite* support obligation, and he was ordered to make a purge payment and continuing payments on the arrearage. Husband has not raised this as an issue on appeal.

Wife argues on appeal that Husband's appeal is frivolous, and that she is entitled to her attorney's fees and other expenses of the appeal.

Findings of fact by a trial court, sitting without a jury, are reviewed under a *de novo* standard with a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d) (2007). The trial court's conclusions of law are reviewed *de novo* with no presumption of correctness. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn.1993).

In the instant case, Husband appeals the amount of alimony awarded, as well as the trial court's denial of his motion to alter or amend. The amount, if any, and type of alimony to be awarded is within the sound discretion of the trial court in view of the particular circumstances of the case, and such an award will not be altered on appeal absent an abuse of discretion. ***Lindsey v. Lindsey***, 976 S.W.2d 175, 180 (Tenn. Ct. App.1997). Moreover, a trial court's ruling on a motion to alter or amend may be reversed on appeal only upon a finding that the trial court abused its discretion. ***Stovall v. Clarke***, 113 S.W.3d 715, 721 (Tenn.2003); ***Harris v. Chern***, 33 S.W.3d 741, 746 (Tenn.2000). Thus, the standard of review for both issues raised by Husband on appeal is abuse of discretion.

A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision that is against logic or reasoning that causes an injustice to the complaining party. ***Williams v. Baptist Memorial Hospital***, 193 S.W.3d 545, 551 (Tenn.2006); ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn.2001). However, so long as reasonable minds can disagree as to the propriety of the trial court's discretionary decision, it will be upheld. ***Eldridge***, 42 S.W.3d at 85. Under the abuse of discretion standard, the appellate court is not permitted to substitute its judgment for that of the trial court. ***Williams***, 193 S.W.3d at 551.

In making a decision on alimony, the trial court must consider myriad factors.[4] Of these, the two factors that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay. ***Robertson v. Robertson***, 76 S.W.3d 337, 342 (Tenn. 2002); ***Bogan v. Bogan***, 60 S.W.3d 721, 730 (Tenn.2001); ***Sullivan v. Sullivan***, 107 S.W.3d 507, 510 (Tenn. Ct. App.2002). On appeal, Husband questions the trial court's finding on Wife's need for alimony, as well as his ability to pay.

Because there is no transcript of the trial in this case, we rely on the Statement of the Evidence approved by the trial court, excerpted above. We also rely on the technical record in this cause.

Husband argues first that the trial court erred in assessing Wife's need for alimony *in futuro*. While Husband does not dispute that Wife was forced to stop working due to multiple health problems, he euphemistically describes her circumstances as "living free of charge in her daughter's home" while receiving Social Security disability and retirement benefits each month. In his summary of Wife's monthly expenses, Husband removes from them any "expenses associated with

---

[4]Under T.C.A. § 36-5-121(i) (2005), relevant factors to be considered in deciding whether to award alimony include:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (3) The duration of the marriage;
> (4) The age and mental condition of each party;
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (6) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
> (7) The separate assets of each party, both real and personal, tangible and intangible;
> (8) The provisions made with regard to the marital property as defined in § 36-4-121;
> (9) The standard of living of the parties established during the marriage;
> (10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (11) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and
> (12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

her housing since she lived with relatives," on the apparent assumption that this Court should require Wife to continue to live with her daughter "free of charge" for the rest of her life.

After reviewing the record, we find that it fully supports the trial court's characterization of Wife's circumstances, specifically, that at the time of trial, she was disabled, was receiving less than $500 per month in disability and retirement benefits, was forced to live with family because she could not afford to live on her own, was forced to rely on family for basic transportation because she could not afford a car, and had been forced to declare bankruptcy by her ongoing medical expenses and Husband's failure to pay the court-ordered *pendente lite* support.

Husband also contends that the trial court erred in assessing his ability to pay alimony. On appeal, Husband emphasizes his assertions at trial that his newspaper and ballroom businesses were operating at a loss, that he was heavily in debt, and that he earned less than $1400 per month. He decries the Statement of the Evidence approved by the trial court as "its own version" of the evidence. He asserts that the Statement of the Evidence includes conclusory statements such as "the evidence shows that Husband is a successful business man," when the evidence showed that he is not. Husband also questions the relevance of certain evidence, such as the trial court's finding that Husband took some of Wife's personal belongings, including a fur coat, sold them, and kept the proceeds. He contends that such evidence shows merely that the parties' relationship was "unhealthy." He maintains that requiring him to pay $1,000 a month in alimony *in futuro* "will force him into a state of indentured servitude."

From our review of the record, it is clear that the trial court did not buy Husband's testimony. Neither do we. The evidence showed that Husband is able-bodied and capable of generating substantial income. The evidence also showed that Husband repeatedly engaged in time-honored methods of disguising income and hiding assets from Wife, *i.e.*, putting proceeds from his business ventures into separate bank accounts and writing well over $200,000 in checks to himself or to "cash," purportedly to pay unspecified "business expenses." Moreover, Husband paid substantial monies to his paramour and for the benefit of at least one child fathered with his paramour. While Wife has no vehicle, Husband has several, and even purchased one for his paramour. Far from mere evidence of an "unhealthy" marital relationship, this evidence shows that Husband has far more income than he will admit, and that he engaged in behaviors that are directly relevant to the issue of his ability to pay alimony. Thus, we find that the record fully supports the trial court's finding that Husband has the ability to pay $1,000 per month in alimony *in futuro* to Wife.

Viewing the record as a whole, we find no abuse of discretion in the trial court's award of alimony *in futuro* to Wife. Likewise, we find no abuse of discretion in the trial court's denial of Husband's motion to alter or amend the judgment.

Wife's sole issue on appeal is whether the present appeal by Husband is frivolous. "An appeal is deemed frivolous if it is devoid of merit or if it has no reasonable chance of success." **Wakefield v. Longmire**, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001). Tennessee Code Annotated §

27-1-122 outlines the damages the appellate court may award against a party who brings a frivolous appeal:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

T.C.A. § 27-1-122 (2000)**.**

In the case at bar, although the record includes a transcript of the *pendente lite* hearing before the divorce referee, there is no transcript of the trial. Thus, we have only the trial court's Statement of the Evidence. While Husband questions the trial court's findings of fact, he gives this Court an appellate record with little to support his argument. The party raising an issue on appeal is obligated to give the appellate court a record that is sufficient for an appropriate review of the issue raised. Tenn. R. App. P. 24 (2007); *McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989). On appeal, "we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings." *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1993). An appeal in which the appellate court's ability to address the issues raised is undermined by the appellant's failure to provide an adequate record may be deemed frivolous. *Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003). Moreover, the issues raised by Husband on appeal turn largely on the trial court's determination of the parties' credibility, which apparently was highly unfavorable to Husband. This Court, of course, is required to afford great deference on appeal to the trial court's determinations on the witnesses' credibility. *Cottingham v. Cottingham*, 193 S.W.3d 531, 538 (Tenn. 2008). Moreover, as noted above, the issues raised by Husband on appeal are reviewed for an abuse of discretion, a notably high standard of review. Any objective review of these factors would cause a reasonable person to conclude that Husband's appeal had "no reasonable chance of success." *Lovelace v. Owens Illinois, Inc.*, 632 S.W.2d 553, 555 (Tenn. 1982). Finally, the record clearly shows that Husband has consistently flouted the trial court's order to pay *pendente lite* support to Wife. All of this leads inexorably to the conclusion that Husband's appeal is frivolous and was undertaken solely to delay payment of the spousal support he is obligated to pay. As our Supreme Court has stated, "[s]uccessful litigants should not have to bear the expense and vexation of groundless appeals." *Davis v. Gulf Insurance Group*, 546 S.W.2d 583, 586 (Tenn. 1977).

Finding Husband's appeal to be frivolous under Tennessee Code Annotated § 27-1-122, we award Wife her reasonable damages incurred as a result of this appeal, including but not limited to interest on the judgment against Husband for any arrearages, and her attorney's fees, costs, and expenses. The cause is remanded to the trial court for a determination of Wife's damages.

The decision of the trial court is affirmed, and Husband's appeal is deemed frivolous under Tennessee Code Annotated § 27-1-122. The cause is remanded for further proceedings not inconsistent with this Opinion. Costs of this appeal are assessed to the Appellant, Jimmy D. Williams, and his surety, for which execution may issue if necessary.


_____
HOLLY M. KIRBY, JUDGE