IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 4, 2024

## JORGE ANTONIO MATA CAMPOS v. AMANDA ROSA RUIZ ZELEDON

**Appeal from the Chancery Court for Cheatham County**
**No. 18292     Larry J. Wallace, Judge**

_____

## No. M2023-01119-COA-R3-CV
_____

In this appeal arising from a divorce action, the husband raises issues pertaining to the trial court's classification, valuation, and distribution of marital assets, as well as the alimony award to the wife. Upon our review, we affirm the determination of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JEFFREY USMAN, J., joined.

R. Spencer Hamlin, Ashland City, Tennessee, for the appellant, Jorge Antonio Mata Campos.

Jennifer F. Noe, Ashland City, Tennessee, for the appellee, Amanda Rosa Ruiz Zeledon.

## OPINION

## I. BACKGROUND

The parties, Amanda Rosa Ruiz Zeledon ("Wife") and Jorge Antonio Mata Campos ("Husband"), were married on January 9, 2010; they separated in November 2019. On August 17, 2020, Husband filed a petition for divorce from Wife. At the time of the proceedings, the parties had one minor child.

Prior to the final hearing on April 12, 2023, Wife filed an asset list of all real and personal property owned jointly by the parties. Husband never filed an asset list or filed any exhibits to support his positions or to refute Wife's contentions.

On July 11, 2023, a final decree of divorce was entered. The trial court held, in pertinent part, as follows:

Given said testimony and review of the pleadings, the Court does find that the Husband's testimony had no credibility whatsoever. However, the Wife's testimony was very credible.

Specifically, the Court heard testimony that the Husband had never filed a federal tax return.[1] The Husband also testified that he had nothing to do with the property at 1150 Lafayette Road, Clarksville, TN, since he quitclaimed it to his girlfriend's son. Nevertheless, Husband applied for a grading permit and his name was listed as an owner in the paperwork for the building permit on the property and also listed his address as the marital home. Husband also testified that he did not own the 1999 Avanti 3258 Cruiser, but was simply living on the boat and just paying the slip fee (with an arrangement he had with the true owner). However, the Husband had the boat listed for sale on his Facebook Account and portrayed it as his own. Further, an affidavit was filed by the previous owner of said boat which stated that the boat was sold to the Husband. Moreover, the boat's title was submitted in the (Husband's) girlfriend's name. The Husband also testified that he sold the 2014 Porsche automobile that was purchased during the marriage. Not surprisingly, it was coincidentally sold to the Husband's girlfriend.

Evidence was presented of the records of Ashland City Building and Codes in relation to the marital home located at 109 Valley View Street, Ashland City, TN. In reviewing the records as well as the testimony presented at trial, it appears that the Husband made improvements to the property without the proper permits. The Husband also used defective building materials and the home has actually been condemned by the City of Ashland City.

The Court had previously ruled in its Order from March 30, 2022, that pursuant to Tennessee Rules of Civil Procedure Rule 36.01 and Rule 36.02, that the Request for Admissions that were served on the Husband were admitted as true and correct statements. In said Request for Admissions, the Husband admitted that he had sexual relations with [purported girlfriend]. The Husband also admitted that he owns the business known as Jomaca Customs. The Husband admitted that he purchased property at 1150 Lafayette Road, Clarksville, TN and then transferred it to Omar Salgado and

---

[1] Wife testified that Husband informed her that he had no social security number, he was not legally residing in the United States, and that he did not have to file taxes.

that he is the son of [purported girlfriend]. The Husband also admitted to owning a 2014 Porsche, a Bobcat Skid Steer, a Chaparral boat, Jet Ski and trailer, as well as several trailers, and an Avanti Bayliner houseboat in the admissions. The Husband also admitted to taking $70,000.00 cash from the safe at the marital home.

The Court heard from both parties as to their income for the purposes of child support and/or alimony. The Wife testified that she made approximately $1,800.00 per month cleaning homes. The Wife has filed tax returns on her income…. The Husband testified that he makes very little income. The Wife introduced as a collective exhibit the Husband's bank records (which were provided in discovery). In reviewing the bank records, the Husband consistently made significant deposits to his account. The Court finds that for several months, the Husband was depositing over $14,000.00 per month while other months deposits were much less. Based upon review of the records and the testimony of the parties, the Court finds that the Wife's income is a gross of $1,800.00 per month and the Husband's income is set at a gross of $6,000.00 per month.

The Court finds that the Wife is entitled to a Divorce on the grounds of inappropriate marital conduct and adultery. The Court specifically finds that the Husband has been guilty of domestic violence and adultery. The prior Order of Protection shall remain in effect as to any contact between the parties with the exception that the Husband may contact the Wife in regard to the minor child.[2]

* * *

The Court finds that based upon the income as set out above that the Father's child support obligation shall be set at $885.00 per month not giving him any credit at this time for visitation. … Father testified that he has not paid any child support since the parties' separation. … The Court finds that pursuant to Tennessee Code Annotated § 36-5-101(e)(1)(C) that in cases where the parents of the minor child are separated or divorced, that there is a presumption in the child support guidelines that child and medical support for the benefit of the child shall be awarded retroactively to the date of the parents['] separation. Further, Tennessee Code Annotated provides that a deviation in the child support guidelines for retroactive child support shall be granted in circumstances where the one spouse has a history of domestic

---

[2] The trial court granted two separate Orders of Protection that did not allow any visitation of Husband with the child, with the second Order of Protection being entered due to violation of the first order.

violence towards the other spouse and caretaker of the child. This Court has previously held that there has been a history of domestic violence in granting an Order of Protection for the benefit of [Wife] and minor child and [its] continuation past the one year time period. Therefore, the Court finds that child support shall be set retroactively to August 17, 2020. Setting child support at $885.00 per month retroactively calculates to $30,090.00 through the end of May, 2023.

Based upon the findings as set out above, the Court hereby makes the following property division. The Court hereby awards to the Wife the property located at 109 Valley View Street, Ashland City, TN. The Court has reviewed the [a]sset list filed by the Wife and finds the value of the real property at $25,000.00 as well as all of her other respective values for personal property. The Court finds that the value of the real property is significantly low due to the condition of the home as evidenced by the report from the Town of Ashland City Building and Codes, as well as pictures submitted into evidence and testimony.

The Court further finds that the Husband admitted in the Request for Admissions of taking $70,000.00 from the safe at the marital home.[3] Husband shall pay back to the Wife fifty percent of the proceeds, which is $35,000.00 within ninety days of this Order being filed. This amount shall be paid to the law office of the Wife's attorney, Jennifer Noe (due to the prior domestic abuse).

The Court also finds that it shall use the values of the items listed in the Wife's asset list that was filed with the Court and made an Exhibit. The Court finds that although the Husband denied owning construction equipment that the proof at trial shows otherwise. The Court also finds that the Husband made a fraudulent transfer of the 2014 Porsche automobile that is marital property. Pictures of the Porsche were made as an Exhibit to the trial and the Court believes that the Husband still has possession of the vehicle. The Husband admitted that he owned the 2005 Hummer and the 2009 Land Rover. The Husband denied owning the 1999 Avanti 3258 Cruiser and the jet ski. Nevertheless, numerous pictures were entered into evidence showing the Husband driving the Cruiser as well as where the Husband is trying to sell the Cruiser and jet ski through Facebook market place. Therefore, the values as set out in the asset list filed by the Wife will

---

[3] On April 20, 2022, an order was entered granting Wife's Request for Admissions to be considered as admitted despite Husband not submitting any responses. Husband asserts that he was not present on that date and that the order reflects that he was without representation and did not understand the requests. The April 20, 2022 order indicates that the admissions were admitted as true and correct statements pursuant to Rules 36.01 and 36.02 of the Tennessee Rules of Civil Procedure.

be used in the further division of assets.

The Court finds that in Order to further divide personal property that the Wife shall be awarded the 2009 Land Rover that is currently in the Husband's possession. The 2009 Land Rover shall be delivered to the marital home within ten (10) days of this Order being filed … or at the Wife's attorney's office. The Husband shall through his attorney make arrangements with the Wife's attorney to deliver said Rover. Said Rover shall be delivered in excellent condition. The Husband shall receive all of the other personal property listed in the Wife's asset list. The Husband shall receive the Bobcat T190 Skid steer, 2014 Porsche 4H N24, 2007 Yamaha PWC, VIN 154EC jet ski, 2003 Haul TS7, UT Title #98761299, 2005 Hummer HU2, 2008 Ford F-250 truck, 1999 Avanti 3258 Cruiser, NCH Series Life, 2008 Ford 550 Super Duty, Trailer - Pro Haul, enclosed white trailer, camper and 2004 Yamaha Motorcycle, VIN #JYAVP11E94A054197. The Wife testified that a lot of these items were used in the Husband's business and that they were purchased during the marriage. To be sure, this leaves a huge variance in what is being awarded to the Husband versus the Wife. The Court has added up the differences between the personal property listed as well as taking into consideration the testimony of the Wife. Said Wife's testimony included that the Husband burned her clothes and several pieces of her jewelry were missing. The Court Orders that the Husband shall pay to the Wife $75,000.00 to offset the division of personal property awarded to said Husband. This amount shall be paid to the Wife within ninety days of this Order being filed. The Husband has been awarded a significant amount of equipment for the continuation of his business and if necessary he can liquidate items to pay the Wife. Any and all personal property at the marital home is awarded to the Wife. The Husband shall return to the Wife within ninety days any and all jewelry that was her personal jewelry.

The Court holds that the Husband shall receive any and all interest in the business known as Jomaca Customs as well as any other business interests he may have in any other businesses. Furthermore, the Husband is totally liable for any debts of said businesses.

Neither party testified as to any joint debts. Therefore, each party shall be solely responsible for any and all debt in their name and indemnify and hold the other party harmless. Each party shall be solely responsible for their own tax obligations.

The only asset left that has not been addressed is the real property located at 1150 Lafayette Road, Clarksville, TN. This property was purchased during the marriage and is marital property. The property was not

purchased as a marital home, but purchased as investment property. The Husband transferred the property to his girlfriend's son, Omar Salgado. … Testimony at trial was that the parties paid $16,000.00 for the property and then the home was torn down and a new home was constructed.

The Husband testified that he had no ownership of the property, however his name is on the application for a building permit. The property is listed on the market to be sold. As previously stated, this Court is of the determination that the Husband has essentially committed perjury against this Court. This Court finds that it is equitable to award the Wife her portion of this property. To be sure, the Wife is entitled to one-half of the purchase price which is $8,000.00. The Court finds that the Husband has a vested right in this property as evidenced by the fraudulent transfer he made on the property as well as pictures and testimony that his vehicles and his subcontractors and or employees have been working on the property and making the improvements to the new construction.

The Court acknowledges that the Husband will have expenses for the construction of the new home and that his entire profit margin will not just be the selling price of the property. The Court is of the determination that a reasonable profit margin on the new construction of a home is $150,000.00. The Wife would be entitled to one-half of the profit margin. Therefore, the Court hereby finds her interest in the home at $75,000.00 for the one-half profit margin plus one-half of the original cost of the land of $8,000.00 for a total of $83,000.00. Half of the equity of the home that the Wife was awarded shall be deducted from her interest in this home which would be $12,500.00. Therefore the Wife is awarded $70,500.00 as her interest in this property. This amount shall be paid upon the real estate closing. However, Husband shall provide documentation of all expenses on the home within 10 days of the closing. If the profit is more than $150,000.00, he shall pay one-half of the difference to the Wife. Due to the fraudulent transfer and Husband's untruthful testimony, the Court shall not make any concessions, if the expenses show a lower profit margin. The Court further finds that if the property does not s[ell] within a nine month period, Wife is still awarded $70,500.00, which shall be paid at the end of nine months from the date of this Decree.

Both parties testified that they owned separate real property that they had prior to the marriage that is located out of the country. Each party is hereby awarded said real property as their separate property.

The Court finds that alimony in this case is appropriate due to the difference in the parties' income. The parties were married January 9, 2010.

The Court finds that the Wife strengthened the family unit, wherein, she focused on nurturing the care for the parties' child and maintaining the household while the Husband focused on building the economic strength of the family with his business which left the Wife at an economic detriment. The Court finds that transitional alimony is warranted to allow the Wife some time to recover from the divorce. The Court hereby awards alimony in the amount of $300.00 for forty-eight months beginning October 1, 2023.

The Court also finds that the Wife is hereby awarded her attorney fees in the amount of $20,175.00…. The Court finds that the Husband is at fault in this marriage and that due to his fraud and perjury that he has substantially caused an increase in the Wife's attorney fees. Further, the Court finds that the award of attorney fees as a form of alimony is appropriate.

\* \* \*

## II. ISSUES

In his timely-filed appeal, Husband raises issues questioning the trial court's determination of what constituted marital assets and the value of those assets, the finding of ownership interests of Husband based on his failure to submit answers to Wife's Requests for Admission, and the award of alimony. The only issue raised by Wife is whether she is entitled to an award of attorney fees on appeal.

## III. STANDARD OF REVIEW

We review the judgment of a trial court in a bench trial de novo upon the record, giving a presumption of correctness to the factual findings of the trial court. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). We will not alter a trial court's findings of fact unless a preponderance of the evidence is to the contrary. *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). In order for the evidence to preponderate against a particular finding of fact, it must support another finding of fact with greater convincing effect. *Ingram v. Wasson*, 379 S.W.3d 227, 237 (Tenn. Ct. App. 2011). Factual determinations based on a trial judge's assessment of witness credibility receive a higher degree of deference and the appellate court will depart from the trial court's determination only if clear and convincing evidence shows the finding to be in error. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). Trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. *See State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn Ct. App. 1991). Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. *See Tenn-Tex Properties v. Brownell-Electro, Inc.*, 778 S.W.2d 423, 425-26 (Tenn. 1989); *Mitchell v. Archibald*, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998).

Trial courts have broad discretion in fashioning an equitable division of marital property, *Jolly v. Jolly*, 130 S.W.3d 783, 785 (Tenn. 2004); *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn.1983), and appellate courts must accord great weight to a trial court's division of marital property. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App.1996); *Batson v. Batson*, 769 S.W.2d 849, 859. Once marital property has been valued, the trial court is to divide it in an equitable manner. Tenn. Code Ann. § 36-4-121(a)(1). The court's distribution of property "is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case." *Batson*, 769 S.W.2d at 859.

Trial courts are also accorded "broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). We do not disturb a spousal support decision unless "the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* Although "[t]he abuse of discretion standard of review does not... immunize a lower court's decision from any meaningful appellate scrutiny," it does "envision a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

## IV. DISCUSSION

### Valuation of 109 Valley View Street

The property at 109 Valley View was purchased on February 16, 2016, for $45,000. The existing home needed considerable repairs. Husband claims that he bought and sold various items in order to make repairs to the marital home. He argues that the valuation of the property presented at trial was not made by a qualified appraiser or by the presentation of any documentation.

Wife testified concerning the condition of the property, the fact that the Town of Ashland City ("City") had condemned the property, and that Husband had been cited to city court on numerous occasions due to continued violations. Wife related that

> the house needs to be constructed brand new because it's not worthy of being habitable. The foundation is destroyed. He removed part of the gutters and water started to get in the house for about three years of which the house has been damaged too greatly.

Wife submitted photographs of the condition of the home in support of the position that it was in poor condition. Husband responded that at no time was the house declared

uninhabitable or occupants barred from residing in the structure.

In an agreement between the parties, the records of the City were introduced. These records revealed that the property had been condemned; the City, in 2019, determined that the structure was dangerous and unsafe. In July 2021, the City indicated that it would be more cost effective to demolish the structure versus making the structure code compliant. Husband argues that no witness appeared from the City concerning the codes enforcement letters and that the City's records were not current. However, as no further construction had occurred on the home to bring it into compliance with the building codes, the findings of the City would be unchanged.

Rule 701(b) of the Tennessee Rules of Evidence provides that "[a] witness may testify to the value of the witness's own property or services." Tenn. R. Evid. 701(b). In *State ex rel. Smith v. Livingston Limestone Co., Inc.*, 547 S.W.2d 942 (Tenn. 1977), the Tennessee Supreme Court observed:

> The courts of this State have followed a policy of liberality in admitting opinion evidence respecting the fair cash market value of real estate. In addition to the testimony of the qualified real estate experts, we have permitted the lay witness to give his opinion of the fair cash market value of real estate, after stating the facts upon which his opinion is based. … The opinion of the real estate expert is accepted because of his superior training, skill and experience, that of the layman because of his special, peculiar knowledge of the particular land, its surroundings and value. In the case of each, it is considered that the opinion is reasonably trustworthy and helpful to the trier of fact in determining the market value of the land in question.

> In most states, and in Tennessee, the owner of real property is held to be qualified, by reason of his ownership alone, to give an opinion in evidence of the value of his land. Because of his interest in the land as its owner, it is presumed that he knows the value of it; hence, he qualifies as a witness by showing mere ownership.

*Id.* at 943 (internal citations omitted).

Husband did not provide any proof as to the value of the property. He could have testified as to the property's value and provided proof of the value, such as an appraisal or expert testimony as to the condition of the home, but he failed to do so. Wife's evidence was undisputed. Further, Husband's arguments on this issue are subject to waiver because a party waives an issue on appeal that was not first raised in the trial court. *Skaan v. Federal Express Corp.*, No. W2011-01807-COA-R3-CV, 2012 WL 6212891, at *7 (Tenn. Ct. App. Dec. 13, 2012) (citing *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010)). Accordingly, we find that the trial court did not abuse its discretion in its valuation

of the property at issue.

## Valuation of 1150 Lafayette Road

Husband purchased the property at 1150 Lafayette Road in Clarksville, Tennessee, on September 26, 2019, for $16,000. On August 4, 2020, fourteen days prior to filing his complaint for divorce, Husband quitclaimed the property to Omar Salgado, the son of Husband's purported paramour, for a consideration of zero dollars.[4] Husband, however, did not register the deed until September 3, 2020, after a statutory injunction was in place restraining and enjoining both parties from transferring, assigning, borrowing against, concealing or in any way dissipating or disposing, without the consent of the other party or an order of the court, of any marital property per Tennessee Code Annotated section 36-4-106(d)(1)(A).[5]

The address listed for Husband on the quitclaim deed, 5509 Stonefield Drive, is the address of his purported paramour, per photos provided as evidence. Husband listed this same address on the title to his Land Rover. During his court testimony, however, he claimed to not know who the owner of 5509 Stonefield Drive was.

Despite the purported transfer of ownership of 1150 Lafayette Road, on April 8, 2022, Husband applied for a building permit for the property on which he listed himself as the owner. A month earlier, on March 8, 2022, he sought a demolition permit for the property listing himself as the property owner. He posted pictures on Facebook of the interior construction of this property along with his business card. Husband admitted that the photo revealed the interior construction of the property, but he denied knowing that the property had been listed for sale.

---

[4] Husband admitted to his relationship with his paramour and that Omar Salgado was her son in the Requests for Admission. Interestingly, despite claiming the property was quitclaimed for zero dollars, Husband stated the following in his brief:

When asked why he transferred the property, Mr. Campos testifies that he did so because he needed money and he did so for $12,000.00 cash.

[5] Tennessee Code Annotated section 36-4-106(d)(1)(A)(i) states as follows:

Upon the filing of a petition for divorce or legal separation, and upon personal service of the complaint and summons on the respondent or upon waiver and acceptance of service by the respondent, the following temporary injunctions shall be in effect against both parties until the final decree of divorce or order of legal separation is entered, the petition is dismissed, the parties reach agreement, or until the court modifies or dissolves the injunction, written notice of which shall be served with the complaint: An injunction restraining and enjoining both parties from transferring, assigning, borrowing against, concealing or in any way dissipating or disposing, without the consent of the other party or an order of the court, of any marital property....

During Wife's testimony, she offered into proof pictures showing Husband's work equipment and personal vehicles at the property at issue. She contends that Husband fraudulently transferred the property with the intention to profit from the sale of the property at a later date. Husband asserts that the records and documents utilized in Wife's claims as to this property were not executed by him. He contends that there is no proof of his ownership interest or a fraudulent conveyance of the property. He notes that Wife does not offer any witnesses to corroborate her allegations. Husband further asserts that it was error for the court to admit Wife's Requests for Admission as true and correct statements. He claims that nowhere in the record is there testimony establishing Omar Salgado as the son of the paramour or that he has a paramour. He argues that no evidence established that he had an extramarital affair. Rather, Husband contends that the trial court's rulings are flawed and based solely on a dislike for him.

The trial court found in the final decree that Husband had committed perjury, his testimony had no credibility whatsoever, whereas that of Wife was very credible. Factual determinations based on a trial judge's assessment of witness credibility receive a higher degree of deference; the appellate court will depart from the trial court's determination only if clear and convincing evidence shows the finding to be in error. *Wells*, 9 S.W. 3d at 783. The trial court further found that Husband had come to the court with unclean hands. As we observed in *Norman v. Norman*, No. M2015-02364-COA-R3-CV, 2017 WL 3705121 (Tenn., Ct. App. Aug. 28, 2017):

> The doctrine of unclean hands is an equitable doctrine based on the principle that "he who seeks equity must do equity." *In re Estate of Boote*, 265 S.W. 3d 402, 417 (Tenn. Ct. App. 2007). "When the doctrine applies, it provides the court with a basis to decline to grant relief to parties who have willfully engaged in unconscionable, inequitable, immoral, or illegal acts with regard to the subject matter of their claims." *Id.* (footnote omitted). But in divorce litigation, the doctrine only applies when the inequitable conduct constitutes "fraud and deceit upon the court." *Chastain v. Chastain*, 559 S.W. 2d 933, 935 (Tenn. 1977).

> … While perjury may justify the application of the unclean hands doctrine in a divorce case, it is not mandatory. *Id.* The decision as to whether to apply the doctrine is left to the discretion of the trial court after consideration of the unique facts and circumstance of each case. *Jolley v. Jolley*, No. M2011-02550-COA-R3-CV, 2013 WL 411454, at *3 (Tenn. Ct. App. Jan. 31, 2013) (citing *In re Estate of Boote*, 265 S.W. 3d at 418); *Wilder* [*v. Wilder*], 863 S.W. 2d at [707,] 713-14 [(Tenn. Ct. App. 1992)].

*Norman*, 2017 WL 3705121, at *5. Courts have held that a party's perjury as to material allegations of a case can bar the party from the relief sought. Based upon this record, we

conclude that the trial court did not abuse its discretion in applying the doctrine of unclean hands and awarding Wife a total of at least $70,500 for both tracts of real property. Husband's actions put Wife at a disadvantage in the proceedings and had the effect of destroying his credibility with the court.

## Valuation of Personal Property

Husband claims that Wife submitted values that were inconsistent with the actual value of the items. He contends Wife's asset list and valuations rely on purchase prices that were not presented at trial and for which no proof of the actual amount paid at purchase was offered by any witnesses. He claims that he had no opportunity to cross-examine any expert witness as to the values.

Husband further argues that he no longer owned several items of personal property despite registrations still being renewed his name. For instance, Husband has an active vehicle record on a 2004 Yamaha motorcycle that he claims he sold ten years prior, yet the record shows that it was renewed in his name on October 7, 2019. Another example involves a 2007 Yamaha jet ski, which Husband claims he sold years prior to the bill of sale showing that he purchased it. Wife provided pictures of the personal property taken right before Husband filed the complaint for divorce that revealed the items were still in Husband's possession. Additionally, Husband asserted that he never owned or knew anything about a 2003 Utility Hauler/Trailer, despite having a title to it signed over by the seller, a Mr. Cook. Wife provided photos of a trailer, matching the description on the title, sitting in the yard with Husband's other work equipment; she testified that the items of personal property were not sold prior to their separation.

One item admitted as an exhibit, a handwritten bill of sale for a Bobcat T190 skid steer, was not denied by Husband; instead, he states, "This is not a receipt for sale. This is when the motor broke that we sent it out to repair." The receipt clearly states "1 Bobcat T190 Skid Steer" at a price of $13,600. The receipt does not reflect charges related to a repair. When Husband was asked, "You paid $13,600 for a repair?," he replied that the company he worked for did. The "sold to" section on the receipt, however, is written to Jorge Mata Campos.

Counsel for both parties agreed to admit an affidavit regarding a boat purchase as evidence, with the trial court reserving the affidavit of the boat seller as an exhibit. Husband, when questioned about the gentleman who sold him a boat, continued to make vague comments about his purchases and sales when he stated, "I buy things and I sell them to make money. I don't know -- it's so many people that...." Although the buyer of the boat is listed as *Haydee V. Salgado* rather than Husband, an affidavit from Joshua Dansby, who is clearly the seller on the bill of sale, states that Husband and a woman made the exchange with a bag of money. Husband testified that he does not know Mr. Dansby and does not recall the sale. The bill of sale, however, lists the address 5509 Stonefield

Drive, associated with Husband's Land Rover, as well as being the address of Husband's paramour. When Husband was questioned regarding a Facebook post he made listing this boat for sale, he answered, "Yes. Because that's where I live. Is that what you're asking me?" When questioned again, "The boat you're living in, Mr. Campos. Did you post that on Facebook Marketplace for sale?," Husband stated, "No. It is just to play around." When Husband was presented with photos of the boat posted for sale on his Facebook profile for an amount of $54,000 with a "Boat, jet ski, and lift. Dock with deck at marina," he claimed to have put it on there just to be bothersome or to show off. He then stated that he could not sell things that are not his.

Husband did not provide any proof as to the value of the personal property. The trial court in its order determined that Husband's testimony was not forthcoming and that he, in essence, committed perjury against the court. Further, as we earlier observed, "[i]t is well settled that a party waives an issue on appeal that was not first raised in the trial court." *Skaan*, 2012 WL6212891, at *7. Husband's counsel at trial offered no objections to the property valuations that Wife submitted as evidence.

As also noted previously, Rule 701 of the Tennessee Rules of Evidence provides that a witness not testifying as an expert may testify in the form of opinions or inferences as to the value of the witness's own property or services. In *Clift v. Fulton Fire Ins. Co.*, 315 S.W. 2d 9 (Tenn. Ct. App. 1958), a panel of this court allowed testimony by an owner as to the value of personal property. *Id.* at 12. The court found that "[t]hough not an expert, she as owner was competent to testify as to the value of the goods lost." *Id.* (citing *McKinnon v. Michaud*, 260 S.W. 2d 721, 726 (Tenn. Ct. App. 1953); *Pruitt v. Williams*, 106 S.W.2d 892, 897 (Tenn. Ct. App. 1937)). An owner's opinion as to value is not rendered inadmissible simply because it is an estimate, rather than a precisely computed figure. Thus, in this case, we find that the trial court did not abuse its discretion in accepting Wife's valuation of the personal marital property. Wife was not impeached as a witness and no evidence was offered to cast doubt on her trustworthiness.

### Existence of Cash and its Division

On Wife's asset list was the sum of $70,000. In her direct examination, she contends that the money was in a safe in the marital home and was taken by Husband. In Wife's Requests for Admission, request number eighteen states:

> 18. Admit or Deny that you removed $70,000 from the safe at the marital home.

Husband did not respond to this request. Wife relies on the trial court's April 20, 2022 order that held the Requests for Admission propounded upon Husband but unanswered are to be considered as admitted. According to Rule 36.02 of the Tennessee Rules of Civil Procedure,

- 13 -

[a]ny matter admitted under [Rule 36.01] is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits….

In this case, Husband failed to respond to the Requests for Admission despite the latitude he was granted by the trial court. The court gave Husband additional time to answer the Requests for Admission and directed him to file the answers on his own or hire counsel to assist him; Husband, however, still argues that he did not have representation and did not understand the requests. Thereafter, Husband failed to appear at the March 30, 2022 hearing regarding the requests. At no time did Husband request the withdrawal or amendment of the admissions pursuant to Rule 36.02. Again, as we earlier noted, "[i]t is well settled that a party waives an issue on appeal that was not first raised in the trial court." *Skaan*, 2012 WL 6212891, at *7.

**Alimony**

As noted previously, trial courts have wide discretion in determining whether there is a need for alimony, and we are generally disinclined to alter a trial court's decision in that regard absent an abuse of discretion. *Gonsewski*, 350 S.W. 3d at 105; *Robertson v. Robertson*, 76 S.W.3d 337, 342 (Tenn. 2002). As we recently observed in *Burks v. Burks*, No. E2022-00776-COA-R3-CV, 2024 WL 979000 (Tenn. Ct. App. Mar. 7, 2024):

A court may award "rehabilitative alimony, alimony in futuro, also known as periodic alimony, transitional alimony, or alimony in solido, also known as lump sum alimony or a combination of these." *Bottorff v. Bottorff*, No. M2007-01792-COA-R3-CV, 2008 WL 2901619, at *3 (Tenn. Ct. App. July 21, 2008) (quoting Tenn. Code Ann. § 36-5-121(d)(1)). Long term alimony in the form of alimony in futuro is appropriate if the court finds that

there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage[.]

Tenn. Code Ann. § 36-5-121(f)(1). However, our state Supreme Court has

noted that "[t]he prior concept of alimony as lifelong support enabling the disadvantaged spouse to maintain the standard of living established during the marriage has been superseded by the legislature's establishment of a preference for rehabilitative alimony." *Robertson v. Robertson*, 76 S.W. 3d 337, 340-41 (Tenn. 2002) (citations omitted). Moreover, "The parties' incomes and assets will not always be sufficient for them to achieve the same standard of living after divorce that they enjoyed during the marriage." *Id.* (citing *Crabtree v. Crabtree*, 16 S.W. 3d at 359-60 (Tenn. 2000)).

Transitional alimony, on the other hand, "is designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income." *Mayfield v. Mayfield*, 395 S.W. 3d 108, 115 (Tenn. 2012) (quoting *Gonsewski*, 350 S.W. 3d at 109).

In determining whether to award spousal support, along with the nature, amount, and duration of the award, the court "shall consider all relevant factors" enumerated in Tennessee Code Annotated § 36-5-121(i). Those factors are as follows:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

- 15 -

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so;

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i)(1)–(12). The two most important factors are the need of the disadvantaged spouse and the obligor spouse's ability to pay. *Buntin v. Buntin*, 673 S.W. 3d 593, 606 (Tenn. Ct. App. 2023) (quoting *Watson v. Watson*, 309 S.W. 3d 483, 497-98 (Tenn. Ct. App. 2009)). When considering these two factors, the primary consideration is the disadvantaged spouse's need. *Van Zandbergen v. Van Zandbergen*, No. M2022-00886-COA-R3-CV, 2023 WL 7483499, at *4 (Tenn. Ct. App. Nov. 13, 2023) (quoting *Murdock v. Murdock*, No. W2019-00979-COA-R3-CV, 2022 WL 611024, at *14 (Tenn. Ct. App. Mar. 2, 2022)).

*Burks*, 2024 WL 979000, at *6-7.

Wife provided bank statements showing monthly deposits made by Husband as high as $14,000. However, in the final decree, the court set Husband's income at a gross of $6,000 per month. Husband did not present at trial any testimony of his actual income, a sworn affidavit of income, any profit or loss income statements, any financial records, or any payroll records. He failed to cite to any bank statement exhibits, thus waiving his contention that the statements would have reduced his earned income. Additionally, Husband failed to provide any business tax returns, financial statements, or any other income statements related to his business that could have more thoroughly informed the

trial court of his financial situation. He refused to provide the income information that was requested of him in discovery and admitted in discovery to not filing any tax returns. In essence, the only proof of Husband's income was Wife's testimony and the production of bank statements that showed some months of Husband making an income of $14,000. He did not provide any evidence regarding his income that contradicted the evidence brought by Wife. When questioned about his income, Husband stated, "I don't have my phone. Maybe on my phone." When he was asked about his tax returns, he blamed Wife for not doing his taxes. Husband claimed that he had to close his construction company because he no longer had the tools to work. He claimed that he could not take anything out of the house and he was "left with nothing on the streets." Wife, however, testified that Husband was continuing to work and had taken all of the equipment necessary to work. This equipment included a Bobcat, two trucks, and two work trailers.

Tennessee Code Annotated section 36-5-121(i) sets forth factors for the court to consider in setting alimony which include the relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so. In this case, the court found that Husband "had been guilty of domestic violence and adultery," and that a prior Order of Protection was to remain in effect. Wife provided proof of her income through tax returns that her income was considerably lower than Husband's.

"It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). In considering the award of alimony, an appellate court will not substitute its judgment for that of the trial court; therefore, the review of such ruling is limited to a determination as to whether the trial court abused its discretion. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaching an illogical result, resolving the case on a clearly erroneous assessment of the evidence, or relying on reasoning that causes an injustice *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Sparks v. Sparks*, E2022-00586-COA-R3-CV, 2023 WL 4067179, at *2 (Tenn. Ct. App. June 20, 2023).

In *Williams v. Williams*, 286 S.W.3d 290 (Tenn. Ct. App. 2008), the trial court determined that the husband, like Husband in this case, "repeatedly engaged in time-honored methods of disguising income and hiding assets from Wife." *Id.* at 297. The evidence presented in *Williams*, "show[ed] that Husband has far more income than he will admit, and that he engaged in behaviors that are directly relevant to the issue of his ability to pay alimony." *Id.* Our review convinces us that the trial court did not abuse its discretion in finding that Husband has ability to pay Wife alimony of $300 per month for forty-eight months.

**Attorney Fees on Appeal**

Wife requests her attorney fees on appeal. Under Tennessee Code Annotated section 36-5-103(c), we have the discretion to award attorney fees to a prevailing party. *Pippin v. Pippin*, 277 S.W. 3d 398, 407 (Tenn. Ct. App. 2008). In considering such a request, the factors that this court considers are the ability of the party seeking the fee award to pay such fees, his or her success on appeal, whether the appeal was taken in good faith, and any other equitable factors relevant in a given case. *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. Jul. 19, 2005).

Wife argues that Husband's appeal was not taken in good faith and that other equitable factors are relevant:

1. The trial court stated in the final decree that "Given said testimony and review of the pleadings, the Court does find that the Husband's testimony has no credibility whatsoever. However, the Wife's testimony was very credible."

2. The trial court found that Husband was at fault in the marriage and "that due to his fraud and perjury that he has substantially caused an increase in this Wife's attorney fees." The trial court awarded Wife her attorney fees at trial in the amount of $20,175.

3. The trial court stated in its final decree that "Wife was awarded a Divorce on the grounds of inappropriate marital conduct and adultery."

Additionally, Wife contends that she does not have substantial income. The trial court found Wife's income to be $1,800 per month and Husband's income to be $6,000 per month. Considering all equitable factors and exercising our discretion, we award attorney fees on appeal to Wife.

## V. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. We remand this case to the trial court for enforcement of the judgment, to set the amount of attorney fees on appeal, and collection of costs below. Costs on appeal are assessed to the appellant, Jorge Antonio Mata Campos.

_____
JOHN W. MCCLARTY, JUDGE